LINDSLEY BEACH *v.* MARIA B. COOKE, Executrix, &c. of THOMAS B. COOKE, deceased.

The legal owner of lands covered by a mortgage may maintain an action to compel the discharge of the mortgage, if it be fully paid, or to redeem the lands from its lien, if it be not paid; and it is wholly immaterial, in this respect, in what manner or for what consideration, or with what object, he acquired the title.

The plaintiff alleged, in his complaint, that he was the owner of lands incumbered, as appeared by the records in the county clerk's office, by a mortgage of $52,000, and interest; that the mortgage was held by the defendant, and was fully paid; and he prayed to have it discharged upon the record. By her answer the defendant claimed that there was due to her, upon the mortgage, $10,000 and interest. After a litigation lasting over five years, it was established by the report of a referee that the statements of the plaintiff were all true, except that a small sum, (less than $1300, besides interest,) remained due on the mortgage.

*Held,* that it would be a cause of reproach to the administration of justice if the court could give no judgment except to dismiss the action, leaving the parties to repeat the same tedious process in another form, before the controversy between them could be ended.

That regarding the action as an action *quia timet* merely, to remove the cloud of the mortgage from the plaintiff's title, upon the allegation that the mortgage was fully paid, it was entirely proper, when it appeared by the evidence that a balance remained unpaid, to grant the relief demanded by the plaintiff, *conditionally,* viz. by a decree directing that the mortgage should be given up and satisfied, upon the payment of $1259.84, with interest and costs, within six months; and that in case of his failure to pay or tender that sum, a judgment of the special term dismissing the complaint, should be affirmed with costs.

But that as the complaint embraced not only the features of a bill *quia timet,* but also of a bill to redeem, and contemplated the possibility of a balance being found due on the mortgage, and demanded such relief as would be agreeable to equity, on that state of facts; *Held,* that although there was no express general offer to pay any balance which might be found due, the case was in form one in which it was proper to allow the plaintiff to redeem.

In an action to redeem, an offer to pay the balance due is not indispensable.

As a general rule, exceptions taken by the prevailing party, on a trial, are not available in the subsequent proceedings, on an appeal from the judgment by the unsuccessful party, where the prevailing party has not also appealed.

Such exceptions do not, under ordinary circumstances, properly constitute any part of the case, on appeal.

A mortgagor who has conveyed the mortgaged premises to another, subject to the lien of the mortgage, is a competent witness for his grantee, to show payment of the mortgage, in an action brought by the latter against the assignee of the mortgage, in his lifetime, and continued against his executrix after his death, to procure the cancellation and discharge of the mortgage, or leave to redeem.

And though such mortgagor admits, in effect, in his testimony, that the conveyance was made to enable him to be a witness in the suit his grantee was expected to commence to procure the cancellation and discharge of the mortgage, this is not a circumstance which will impair the effect of the deed, as between the parties.

Even if such conveyance were a deed of gift as between the parties, the defendant in that suit could not question the consideration.

If any material error has occurred on the trial before a referee, or in the findings of fact by him, a new trial should be granted; but if the only error appearing in the case is in the judgment which the referee directs to be entered as the legal result from those facts, it is the province and within the power of the court to correct it by rendering the appropriate judgment.

Thus where, on the trial of an action for the cancellation or redemption of a mortgage, the referee dismissed the complaint, and on appeal by the plaintiff, the general term of the Supreme Court decided that the referee erred, and that upon the facts found by him the plaintiff was entitled to equitable relief, and after settling the amount due on the mortgage, gave a judgment allowing the plaintiff to redeem on payment thereof; *Held*, that the court had authority to render such a judgment, and the same was affirmed.

THIS action was commenced in August, 1853, against Thomas B. Cooke, in his life time, to procure the cancellation and discharge of a mortgage executed by Ephraim Beach to Francis I. Marvin, in the year 1836, to secure the payment of fifty-two thousand dollars and interest; which mortgage had been duly recorded, and was afterwards assigned by the mortgagee to said Cooke; the plaintiff alleging that the mortgage had been fully paid, but remained uncanceled of record, and that the lands covered by it had been conveyed to him. The plaintiff, also, alleged, that there had been large transactions between Ephraim Beach and said Cooke, aside from the bond and mortgage and the matters connected therewith, and that the latter was indebted to the former in

a large sum on that account: that the balance due on such account had been assigned to him, and he prayed that an account might be taken, of such transactions, and a judgment for the balance which might be found due from the defendant on that accounting. Thomas B. Cooke died before the complaint had been answered, and the present defendant, as executrix of his will, was substituted as defendant by an order of the court in December, 1853.

The defendant, by her answer, claimed that ten thousand dollars of principal and large arrears of interest, remained due and unpaid on the mortgage, and that there was a large balance due to the testator from Ephraim Beach on account of the other transactions between them. There were other matters stated in the pleadings, relating to an association of persons, (including, with others, Ephraim Beach and Thomas Cooke,) on account of which association the purchase by Beach of the lands covered by the mortgage was made; but the association never availed itself of the purchase, and as any equitable interest it may at any time have had in the lands, was extinguished long prior to the commencement of this action, no question is now presented having any reference to the existence of that association.

On the trial, which was had before a referee, in July, 1855, Ephraim Beach, the plaintiff's grantor, being called as a witness on the part of the plaintiff, was objected to by the defendant's counsel, on the ground that he was the assignor of the plaintiff of the right to bring this suit, and Mr. Cooke being dead, he could not be a witness; also on the ground that the suit was prosecuted for his immediate benefit. The objection was overruled, the referee deciding that the witness was competent for the purpose of showing payment of the mortgage, but not to establish any demand due to him from Thomas B. Cooke in his life time for the purpose of enabling the plaintiff to recover such demand. The ruling was excepted to by the defendant's counsel, and the testimony of the witness was received. The conveyance from Ephraim Beach

to the plaintiff contained covenants against incumbrances and for quiet enjoyment, but he was released by the plaintiff from all liability on the covenants, prior to his examination. It appeared that the plaintiff gave to Ephraim Beach a mortgage upon the land for twenty-five thousand dollars in consideration of the conveyance to him. The witness, in the course of his cross-examination, stated that he had contemplated commencing a suit when he gave the deed, and had advised with counsel about it. That he believed he made the conveyance for the purpose of becoming a witness in the cause. Several exceptions were taken by the defendant to portions of the testimony of the witness, during his examination. No other witness was examined on either side, but a large amount of documentary evidence was taken, and several statements of accounts between Ephraim Beach, and Thomas B. Cooke, in relation to their private affairs, and to their transactions with the land association, were introduced by each of the parties.

At the close of the testimony on the part of the plaintiff, the defendant's counsel moved that the complaint be dismissed on the grounds: 1st. That the plaintiff was not a *bona fide* purchaser of the premises covered by the mortgage, and, 2d. That the evidence was not sufficient to sustain the action. The motion was denied, and the defendant's counsel excepted.

After hearing the proof on the part of the defendant, the referee, on the 30th of October, 1860, made his report, by which he found that the mortgage was made by Ephraim Beach to Francis I. Marvin, on the 4th day of January, 1836, to secure the payment of $52,000, which was further secured by the bond of the mortgagor, and of Thomas B. Cooke and several other persons members of the land association; that the mortgage, on the day after its date, was duly recorded in the county clerk's office, and was afterwards reduced by payments, so that there remained due upon it on the 20th day of September, 1839, only $24,695.92; that on that day

Ephraim Beach paid that balance, excepting ten thousand dollars, which sum was paid to the mortgagee by Thomas B. Cooke, who at that time, with the assent of Beach, received an assignment of the bond and mortgage from the mortgagee, as security for the re-payment of the ten thousand dollars with interest; that said Beach afterwards delivered to said Cooke ten certificates of Canajoharie and Catskill rail road state stocks, of $1000 each, with powers of attorney to transfer the same, with the understanding that they were to be sold, and the proceeds applied in payment of said ten thousand dollars and interest; that the stocks were sold by Thomas B. Cooke, on the 5th day of June, 1843, the proceeds of which reduced the amount due on the mortgage to the sum of $1,259.84, which sum with interest from that date still remained due and unpaid; that he had not stated the accounts between Beach and Cooke, such purpose of the action being abandoned by the plaintiff. The referee also found as a conclusion of law, that the defendant, as executrix of the will of Thomas B. Cooke deceased, was entitled to hold the bond and mortgage as security for the payment of the balance found due to her; and on that ground he decided that the plaintiff's complaint should be dismissed, with costs. Other facts were found in the report, but they have no material bearing upon the questions presented by the present appeal. The plaintiff excepted to the report, on the ground, among others, that it did not grant the relief to which he was legally and equitably entitled.

Judgment having been entered in accordance with the directions of that report, the plaintiff appealed to the Supreme Court, by which court the judgment was modified, so as to direct that the mortgage should be given up and satisfied upon the payment of $1259.84, with interest from the 5th day of June, 1843, until paid, together with the costs prior to the appeal, with the interest thereon; and that in case the plaintiff should fail to redeem the premises by paying or tendering those sums within six months after written notice

of the entry of that judgment, then that the judgment appealed from should be affirmed; neither party to recover costs upon the appeal. (See 39 Barb. 360, S. C.)

*John H. Reynolds,* for the appellant.

I. During the progress of the trial and at the close of the plaintiff's evidence, the defendant moved that the complaint be dismissed on the ground that the plaintiff was not a *bona fide* owner, purchaser or possessor of the premises covered by the mortgage in question, and was not entitled to the aid of a court of equity in an action of this character. The motion was denied, and the defendant duly excepted. The question as to the right of the plaintiff to maintain the action was thus directly raised, and must be considered; for if the exception was well taken, the judgment finally given by the referee, dismissing the complaint, was right, although a wrong reason may have been assigned for it. 1. The facts in respect to the plaintiff's standing in court are entirely undisputed. But one witness was sworn, and there is no conflict of evidence, and from this evidence it is entirely apparent that the plaintiff is a mere nominal party, to whom the real party in interest (E. Beach) conveyed the property covered by the mortgage, for the sole purpose of becoming a witness in his own behalf, at a time (1853) when the law did not allow a party to become a witness in his own favor. 2. Ephraim Beach, the grantor and real party in interest, as well as the real debtor, was the only witness sworn on the trial, (the original defendant, Thomas B. Cooke, having died,) and he swears, in so many words, that he made the conveyance of the mortgaged property for the sole purpose of becoming a witness in the cause. 3. After the execution of the conveyance to the plaintiff and up to the time of the trial of the cause, Ephraim Beach, the grantor, remained in the actual possession of the property and in the receipt of the rents and profits, the same as he had always done from the time

he purchased it of Marvin in 1836. 4. The transaction by which the property was conveyed to the plaintiff, was one in which Ephraim Beach was alone the actor. He executed the conveyance when the plaintiff was not present, and knew nothing of it, as he then resided in the county of Delaware. There was no prior negotiation or agreement between them, or any thing bearing the remotest resemblance to a purchase and sale in good faith. 5. It does not appear that up to the time of the commencement of this suit the plaintiff ever had any thing to do with or assumed any dominion or control over the property. It does not appear that he knew of the commencement of this suit in his name. Ephraim Beach had contemplated a suit in his own name, and advised with counsel. The conveyance was made under the directions of counsel, and a suit brought immediately by such counsel in the name of the plaintiff. To a party appealing to it under such circumstances, there is nothing to induce a court of equity to afford relief, for the plaintiff is not a bona fide purchaser and has no claim to equitable aid. (Story's Eq. Jur. § 1502, et seq.) 6. The Supreme Court erroneously assumed that the referee found as a fact, or that there was any evidence tending to show, that the plaintiff was a bona fide purchaser. Neither his findings of fact or decisions justify any such construction. He probably held that a person having no *bona fides* might have the kind of relief sought. But if on the motion to dismiss the complaint he did determine that upon the evidence the plaintiff was a bona fide purchaser, his determination is reviewable, for that motion raised a question of law as to the plaintiff's right of action upon undisputed evidence, and the evidence may be examined in all courts, to see if the right was made out. 7. The Supreme Court was also in error in assuming that some exceptions taken by the defendant on the trial could not be considered *for the reason that the defendant had not appealed.* The defendant could not and had no occasion to appeal, for he had the very judgment in his favor which he

demanded all through the trial. And it must necessarily follow, either that the exceptions on the part of the defendant must now be open for consideration, so far as to enable her to show that the judgment of the general term was wrong, or it presents a case of mistrial. And if the judgment ordered by the referee was erroneous, the general term should have granted a new trial instead of giving final judgment to the prejudice of the legal rights of the defendant. 8. And unless one or the other of these positions be sustained the defendant is deprived of all benefit from the consideration of the only two important questions in the cause, to wit: The plaintiff's legal right to maintain such an action, and the competency of Ephraim Beach as a witness, upon whose evidence alone it is sought to destroy the mortgage held by the defendant.

II. Assuming that the question, as to the plaintiff's standing in court, is open for debate as the record now stands, it is submitted, that no case was made by the plaintiff entitling him to any relief in equity. 1. To entitle a party to maintain a bill in equity to remove a cloud upon the title to real estate, he must show himself to be a purchaser for value, or at least to stand in the position of a party having *bona fides* in the sense of the law. Without this he is not in condition to invoke the aid of equity. (*Kimberly* v. *Sells,* 3 John. Ch. 467, 471; Story's Eq. Jur. § 693.) 2. And to entitle a plaintiff to prevail in an action of this character, he must, in all cases, show the clearest equity. The court will not lend its aid to mere adventurers and speculators, who come into court in this form for the very purpose of securing unfair advantages which were not attainable in the ordinary course of justice. (Story's Eq. Jur. § 693.) 3. There is not in any party in any case a strict legal right to maintain a suit for such relief as is sought in this action. It is granted or not in the discretion of the court, for the furtherance of justice and to prevent injustice. It has never been exercised to enable one party to get an undue advantage of

another, or to interfere between rival claimants standing upon equal ground. (Story's Eq. § 693.) 4. If it be conceded that Ephraim Beach could have maintained such a bill for the purpose of adjusting, in one action, the various matters existing between him and Cooke, it proves nothing in favor of the present· plaintiff. As between the original parties they would still stand upon equal terms, and no injustice might be done; but the record discloses, in the present case, that the *title* from which the plaintiff desires a cloud removed was transferred to him to be held nominally to enable the real party to get an undue advantage of his adversary. This is the whole reason for the transfer to the plaintiff, and is one of the special circumstances in the case which it is supposed makes·it the peculiar favorite of equity. 5. It is also supposed that because E. Beach might die, that furnishes another ground for the interference of the court in this form of action, and justified this proceeding. And it appears to have been assumed, that any proceeding by which E. Beach could be made a witness on his own behalf, would be approved as meritorious. But it is believed that no such suit has ever before been sustained for such a reason. (*Wilkes* v. *Wilkes*, 4 Edw. Ch. R. 630; *Hamilton* v. *Cummings*, 1 John. C. R. 517.) 6. Although the power of the court to entertain a suit of this character is fully established, it is, however, exercised only under very special circumstances. (1 John. Ch. R. 517; 4 Edw. Ch. R. 630.) 7. And the principle which underlies the exercise of the power is the prevention of injustice, and the preservation of the equal rights of rival parties. 8. The present suit originated in a device to evade this principle, and secure an advantage not allowed in the ordinary course of justice, and although the Supreme Court say that the defendant has had "full opportunity to litigate with the plaintiff the amount remaining due on the mortgage," the remark is not, in its true sense, correct. By this proceeding the defendant was taken at disadvantage. The question as to the amount re-

maining due on the mortgage was determined entirely on the evidence of E. Beach, when Cooke was in his grave and could not be heard. 9. And although the complaint claimed an accounting of all the transactions between the original parties, in respect to which large balances were claimed by both, this claim was abandoned by the plaintiff on the trial, and E. Beach was allowed to give evidence (which could not be contradicted) tending to show the mortgage paid in favor of a party who was invested with the title for the sole and only purpose of securing this unfair advantage. 10. And it is submitted that the plaintiff does not make a case that entitles him to be heard in court in this form of proceeding. He has assumed, as a volunteer, the position of plaintiff, without having parted with a dollar, for the sole purpose of enabling the real party to become a witness on his own behalf. When this fact appeared, it would have been proper to have dismissed the complaint, without considering whether there was any thing due on the mortgage or not, and leaving him to show what in fact was due whenever the mortgagee should attempt to foreclose it.

III. There is no known rule of equity which entitles a mortgagor or his assignee of the equity of redemption, as of course, to fille a bill for the purpose of cancelling a valid mortgage *pro tanto*, upon which partial payments have been made, but upon which something is due. In all such cases, under ordinary circumstances, the mortgagee is entitled to hold and enforce his security in the ordinary way. 1. If, in such case, a dispute exists as to the amount due, the mortgagor is at liberty to contest the question of amount, on a bill to foreclose, and this is the only remedy, unless, under special circumstances, he may invoke the aid of a court of equity to precipitate a controversy, which circumstances, it is believed, this case does not present. 2. It is true that a party thus situated may file a bill to redeem the mortgage and discharge it upon payment of the amount due. But this right of redemption is a creature of equity, and is sub-

ject to all the rules of equity. (Coote's Law of Mort. 513.) 3. To entitle the assignee of the equity of redemption to redeem, he must show an honest right, assigned for an honest purpose, without collusion or fraud ; in short, he can maintain no such bill, except upon showing good faith. "A prowling assignee," in the language of Lord Hardwick, has no such right. (Coote on Mortgages, 514, 516 ; *Franklin* v. *Fern,* Barnard's R. 30 ; *Packington* v. *Barrow,* Prac. in Ch. 216 ; *Nicholson* v. *Hooper,* 4 Myl. & C. 179.) 4. The general principle, that "courts of equity will not take the least step imaginable," against innocent and *bona fide* purchasers, but will allow them every advantage which the law gives, requires that, as against a party, with a title suspected of collusion or bad faith, they should render no aid against one possessing à legal right. (Story's Eq. Jur. §§ 1502, 1503.) 5. And it is clear the plaintiff shows no such right as a purchaser, as entitles him to the aid of equity in the disturbance of legal rights. (Story's Eq. § 1502 ; *Willoughby* v. *Willoughby,* 1 T. R. 763 ; *Maundrell* v. *Maundrell,* 10 Ves. 246.) 6. But the plaintiff did not file a bill to redeem and was not entitled to relief, on that ground. Such relief is not consistent with his complaint.

IV. The plaintiff had therefore no just ground of complaint that the referee directed the complaint to be dismissed. The referee did more than the plaintiff was entitled to have done, by considering the question whether the mortgage had been paid or not, and after he found that there was something due upon it, it was clearly his duty to dismiss the complaint, as the defendant was unquestionably entitled to hold it and enforce it as a security for the amount unpaid, and leaving both parties to the ordinary remedies in the courts.

V. But it is submitted that there is no possible view of the case on which the plaintiff was entitled to any relief on appeal. 1. There is no possible doubt but that the $10,000 advanced by Cooke to Marvin on the 20th of September, 1839, was for the benefit, and at the request of Beach, and that the

assignment of the mortgage to secure that specific amount, was made with his assent.   This fact is found by the referee, and is proved beyond any question, and it is assumed by the plaintiff in the very effort to show it was paid by the proceeds of the Catskill and Canajoharie rail road stock. 2.  This money was advanced by Cooke as the surety of Beach as an isolated and independent loan of money, for which he took the assignment of the mortgage from Marvin, and it can not properly be mixed up with the unsettled and complicated affairs of the land association, or with the private accounts of Beach and Cooke, any more than if on loaning the money Cooke had taken a new mortgage from Beach to secure its repayment.   At the very best, the only right which Beach had in respect to these other accounts, would be that of set-off, if he could show a balance due him in case of a foreclosure.   It did not entitle him to maintain a suit of this character, and have the accounts adjusted in this form of action. 3.  In respect to the unsettled accounts unconnected with the loan of the money, Beach had a perfect remedy at law in an action of assumpsit if by his own neglect the whole claim was not barred by statute.   4.  And the plaintiff knew this when the suit was commenced, for his complaint is based upon the allegation that the mortgage was paid by a specific application of money or securities for that purpose; and any claim to the adjustment of the accounts between the parties was abandoned on the trial, and the investigation confined to the question as to what payments had been made upon the mortgage.   5.  It is not pretended by Beach that he ever made any payment to Cooke having any special reference to the $10,000 paid Marvin, except the state stock, and that can be claimed only by a violent inference, from the fact that Cooke told him he raised the $10,000 of Pratt by pledging his stock in the Catskill Bank; that he was urged to pay money to enable him to redeem that stock; that he furnished him certificates of state stock to the amount of $10,000; and that Cooke afterwards told him that he had converted

the state stock into money, and redeemed his bank stock from Pratt. The receipts given by Cooke at the time he received the state stock do not show that the proceeds were to be applied on the mortgage; they were to be "accounted for." 6. There is not the slightest evidence in the case tending to show that any other of the various money transactions between them had the remotest connection with the mortgage or the amount due upon it. 7. The fact that Cooke in making up an account against Beach to June, 1843, charging the $10,000 paid Marvin and crediting the proceeds of the state stock, does not tend to show that any other of the items in that account were connected with the mortgage, but on the contrary each item of debit and credit shows them to have grown out of transactions not connected with the loan of $10,000. Besides, that account shows a balance in favor of Cooke, June 5th, 1843, of about $7000. 8. And if that account is resorted to for any purpose as evidence against Cooke, it must be assumed that such balance was then due, and payments made by Beach generally, on account, must be applied first in extinguishment of demands unsecured by mortgage, and making this application would show a much larger amount due on the mortgage than is found by the referee. 9. It is abundantly proved that in respect to the true state of the accounts between them the parties widely differed—each claiming a balance due to himself, and there is nothing in the case to enable any court to determine where the true balance lies. Each party made claims against the other which were denied and disputed. A case is not therefore presented upon which the plaintiff, even if he had a standing in court as a *bona fide* purchaser, would be entitled to relief, for he is in all cases bound to make out a clear case. 10. None of the accounts made out by Beach agree in result, and the witness says he made them out in various ways, and they all contain elements of charge against Cooke, showing that they are wholly unreliable. For example, in exhibit No 25, in the handwriting of Beach, and making a

balance in his favor as of June 5, 1843, of $7,459.87, there is a charge against Cooke of $10,083.58, for "forfeiture of land payments in proportion to the abandoned stock paid by E. Beach," in respect to which there is no proof of the liability of Cooke for any such claim ; and striking this out, on Beach's own showing the balance would be in favor of Cooke, to the amount of several thousand dollars.

V. On the trial of the cause Ephraim Beach, the mortgagor in the mortgage sought to be canceled, and who prior to the commencement of the suit had conveyed the land and assigned his pretended claims and accounts against Cooke to the plaintiff, was offered as a witness for the plaintiff, and was the only witness sworn in the case. He was objected to as incompetent by the defendant's counsel, on the ground that Cooke being dead, he as the plaintiff's assignor could not be a witness. The referee decided that the witness was competent for the purpose of showing that the *mortgage was paid,* but not to establish any demand due him by Thomas B. Cooke in his life time. The defendant excepted to the decision allowing the witness to be sworn for any purpose, but the plaintiff took no exception to the ruling of the referee that Beach could not give evidence to establish any demand due him from Cooke. 1. It was settled as the rule of the trial, *to which the plaintiff assented,* that the witness Beach could give no evidence to establish any demand due him from Cooke, in his life time, and therefore, if there is any such evidence in the case it is to be assumed as ruled out and disregarded by the referee with the plaintiff's assent. 2. And when at the close of the plaintiff's case, the defendant, for the purpose of showing that the state stock given by Beach to Cooke was not to be applied specifically to the payment of the mortgage, but generally to the whole account Cooke had against him, offered to prove that at the time the stock was turned out Beach was largely indebted to Cooke over and above the mortgage, it was objected by the plaintiff, among other grounds, "that the state of the accounts between Beach and Cooke is

not involved in the cause as it now stands." It appears, therefore, most clearly that the law of the trial fixed by the referee and *assented to by the plaintiff*, that the state of the account between the parties was not in issue, and. no question can be made on appeal by the plaintiff arising upon that branch of the case.

VI. The rulings of the referee on the trial of the cause in respect to the admissibility of evidence, so far as they were against the plaintiff, were correct.

VII. Ephraim Beach was not a competent witness for the plaintiff, as to any transaction had between him and Cooke, for the reason that Cooke at the time was dead. The case of the plaintiff rests entirely on his evidence. 1. As the judgment at special term dismissed the complaint, the defendant at the general term had no occasion to argue exceptions taken in his behalf. The only effort was to show from the whole case, that the judgment given at the special term was right, even if rendered for a wrong reason. 2. If however the judgment of the special term is erroneous, it was the duty of the general term to grant a new trial. They had no right to assume that under no circumstance the defendant could be able to show that a greater sum was due on the mortgage than was found by the referee. 3. And if judgment is to pass against the defendant, finally fixing the amount due on the mortgage, the defendant must be allowed in some form the benefit of the exceptions taken by her on the trial. It is therefore submitted, that the judgment at general term should be reversed, and that of the special term affirmed ; or if the judgment at special term was in any respects erroneous, a new trial of the cause should be ordered.

*L. Tremain*, for the respondent.

I. The pleadings and proofs having disclosed the fact that the defendant held the mortgage, insisting that it was a valid lien for $10,000 and interest from September 20, 1839 ;

and the referee having found as a fact that such mortgage had been reduced by payments to $1259.84 and interest from June 5, 1843; and the evidence showing that such payment rested in parol proof, liable to be lost by the death of the witness, Ephraim Beach, the plaintiff was entitled to a decree upon such fact found, declaring that on payment of said balance, the land should be held discharged from the lien of said mortgage; or at least to a decree declaring the mortgage satisfied *pro tanto*, and ordering its partial cancellation.  1. Equity has jurisdiction in such a case on the principle of *quia timet*, to enable the party owning the land to obtain a cancellation of the *apparent* lien before he loses the testimony on which he relies to show payment, which he might do if he were obliged to wait and defend himself. (5 Paige, 501; Story's Eq. Jur. 698–700; *Ward* v. *Dewey*, 16 N. Y. Rep. 519; 1 John. Ch. 424, 520; 6 Peters, 95; 1 Paige, 384; 10 Yerger, 59; 1 Green's Ch. 367; 3 Myl. & Craig, 104, 105; 1 Hill's Ch. 295; 1 Russ. 559; 4 John. Ch. 66; *Bromley* v. *Holland*, 7 Vesey, 3.) Also on the principle that the lien which on the face of the papers appears valid, but which, by reason of extrinsic facts, has become satisfied, in whole or in part, is a cloud upon the title to real estate. (Same authorities; Story's Eq. § 700, and numerous cases cited in note; Id. § 705.) "Cases also may occur where a deed or other instrument originally valid has by subsequent events, such as by a *satisfaction* or *payment*, or other extinguishment of it, legal or equitable, become *functus officio;* and yet its existence may be either a cloud upon the title of the other party, or subject to the danger of some future litigation, when the facts are no longer capable of complete proof or have become involved in the obscurities of time. Under such circumstances, although the deed or other instrument has become a nullity, yet courts of equity will interpose upon the like principles, to prevent injustice, and will decree a delivery and cancellation of the instrument. This is indeed a very old head of equity, and traces of it are to be

found in some of our earliest reports." 2. In case the instrument is partly paid or satisfied, the party is entitled to the same relief *pro tanto;* to a decree declaring it paid in part and directing its cancellation or discharge as a lien, on payment of the balance. All the reasons for entertaining jurisdiction in a case of full payment apply to such a case. "Courts of equity in granting relief act upon an enlarged and comprehensive policy; and therefore, in granting it, they will impose such terms and qualifications as shall meet the just equities of the opposing party. Cases of this sort afford a very frequent illustration of the maxim that he who seeks the aid of equity must do equity." (Story's Eq. § 707.) 3. The case at bar affords a striking illustration of the value of this branch of equity jurisprudence, and contains all the elements necessary to confer it. We have a mortgage apparently a lien on the plaintiff's land, but in truth nearly paid—kept on foot, however, for the whole sum apparently due according to the papers—its holder omitting to prosecute or call for payment for fifteen or twenty years, and the proof of payment resting in the knowledge of a witness who, when examined, was confined by serious illness, and who in fact died soon after he was examined as a witness. 4. The judgment or decree of a court of competent jurisdiction necessarily determining a fact put in issue is conclusive in all future actions between the same parties; and the fact thus found can never again be litigated between them. (*Embury* v. *Conner,* 3 Comst. 511; *Doty* v. *Brown,* 4 id. 71; *Simpson* v. *Hart,* 1 John. Ch. 91; *Vail* v. *Vail,* 7 Barb. 226; *Kingsland* v. *Spalding,* 3 Barb. Ch. 341; *Etheridge* v. *Osborn,* 12 Wend. 399.). This rule is founded on the policy of preventing any unnecessary litigation, and is intended to promote quiet and peace and to avoid frequent contention and strife, as otherwise "perjury would be introduced and suits would be endless." The fact of payment being directly involved in this case, and having been found in the plaintiff's favor, the judgment or decree should have followed, in such

form as to give the plaintiff the benefit of the finding. The defendant should not be left at liberty to bring another action against the plaintiff, claiming to recover the whole amount of the mortgage; nor should the plaintiff be exposed to the necessity of litigating the question of payment a second time, with the hazard of a different result, in consequence of the loss of his evidence. This case shows that if this report of the referee stands affirmed, the danger of a second litigation does not rest in conjecture; a second action having been already commenced by the defendant, against the plaintiff and others, to foreclose the mortgage for the whole $10,000 and interest, after the death of Ephraim Beach, and a short time before the twenty years had elapsed since the last payment on the mortgage. 5. A decree in an equity case dismissing the complaint, after a trial upon the merits, is a bar to another action for any relief which might have been obtained in the first case. (*Ogsbury* v. *La Farge,* 2 Com. 113; *Perine* v. *Dunn,* 4 John. Ch. 140; *Neafie* v. *Neafie,* 7 id. 1; *Holmes* v. *Remsen,* Id. 460.) May not the defendant rightly claim in future cases that this decree dismissing the complaint negatives the allegation of payment? Is there not the risk, not merely that the fruit of the finding may be lost to the plaintiff, but that the judgment shall be deemed conclusive against the claim of payment as amounting to *res judicata* upon the substance of the bill. A decree dismissing a bill to set aside a deed affirms its validity, and concludes the plaintiff on that point forever. (*Lansing* v. *Russell,* 13 Barb. 510; same point held in *Burhans* v. *Van Zandt,* 3 Seld. 523; also in *Hamilton B. A.* v. *Reynolds,* 5 Duer, 671.)

II. It is no answer to point first to object that the complaint contains no offer to pay the debt due with interest and costs; an averment said in some early dicta to be essential to a bill to redeem a mortgage. (18 John. 144, and 1 John. Ch. 288.) 1. This is not merely a bill to redeem. The distinction is broad between such a bill and a bill *quia timet*

like the present, while the jurisdiction of equity in the two classes of cases depends on different principles. (Story's Eq. ch. 27 and § 701.) This rule as to the tender and offer had reference to the peculiar doctrines applicable to the law of mortgages requiring a tender in order to save an absolute forfeiture of the estate and to give equity jurisdiction. (4 Kent's Com. 140, 158, 186; 2 Barb. Ch. 193.) 2. It is not correct however to say that, even in a bill to redeem, an offer to pay the debt is a material part of the substance of the pleading. It was only in the *prayer* that the plaintiff asked for possession and a redemption on the payment of such sum as upon an accounting should be found due. (*Quin* v. *Brittain,* Hoff. 353; Willis' Eq. Pl. 169.) 3. Such a statement being only part of the *prayer*, its omission is unimportant under the code of procedure, by which the court is required, where the defendant appears, to give such relief as is consistent with the case, without regard to the precise form of the prayer. (Code, § 275; *Eno* v. *Woodworth,* 4 Comst. 253; *Marquat* v. *Marquat,* 2 Kernan, 336.) 4. Were this only a bill to redeem, and were such a statement necessary, there having been no such objection taken to the complaint, and the proof of partial payment having been given without objection, and the fact of payment being found, the court, on an appeal, may treat the pleading as amended, or may order an amendment to embrace the case as proved, and that *should* be done, if necessary, to avoid the great injustice of giving effect to a mere technical objection, which was not raised at all in the trial court. (Code, § 173; *Clark* v. *Dales,* 20 Barb. 42; *Bate* v. *Graham,* 1 Kern. 237; *Harrower* v. *Heath,* 19 Barb. 331; *The People* v. *Holmes,* 5 Wend. 200.) 5. The complaint therefore is entirely good and sufficient as a bill to redeem a mortgage.

III. The case made by the complaint and found by the referee was complete, and contained every fact essential to entitle the plaintiff to redeem; and the usual and proper decree upon it was one declaring that, upon payment (gen-

erally within six months) of the balance due, the mortgage should be redeemed, but in default of such payment, the complaint should be dismissed; in which case the effect of the dismissal would be equivalent to actual foreclosure. (*Quin* v. *Brittain*, Hoff. Ch. 353; *Bishop of Winchester* v. *Paine*, 11 Vesey, 199; *Cholmley* v. *Duch. of Oxford*, 2 Atk. 267; *Perine* v. *Dunn*, 4 John. Ch. 142; 2 Barb. Ch. Pr. 199, 200, 630–2; *Waller* v. *Harris*, 7 Paige, 167; *Sherwood* v. *Hooker*, 1 Barb. Ch. 650; *Beekman* v. *Frost*, 18 John. 561; 2 Madd. 420.)

IV. It follows from the preceding points that if this were only a *bill quia timet*, the decree should have been one declaring the payment *pro tanto* and ordering cancellation to that extent; that if it were a bill to redeem only, the decree should have allowed the plaintiff to redeem on payment of the balance found due; and that treating it as a combination of both, (the true view of the case,) the decree should have granted both these kinds of relief, and that in any and every view of the case the decree of dismissal was entirely erroneous.

V. It can not be successfully urged against point first that the referee's finding on the fact of payment is erroneous. 1. The finding is conclusive in this court. 2. It is warranted by the probable, clear and uncontradicted evidence of Beach, and is confirmed by the omission for so many years to ask for payment, either of principal or interest. 3. Independent of Beach's evidence, the rules of law and equity would require the application of the moneys received by Cooke on the state stock to the payment of the mortgage, on both the following grounds: 1. Because such application would be for the interest of the mortgagor. (2 Parsons, 143; Id. note 3, pp. 776, 768, 769; 9 Cowen, 747; *Hadley* v. *Chapin*, 11 Paige, 245; *Niagara Bank* v. *Rosevelt*, 9 Cowen, 409.) 2. Because, upon the accounts, there is no pretense that outside of the mortgage moneys Cooke had any claim for so large a sum as the amount of the stock.

VI. On the proofs, the referee erred in not deciding that the mortgage had ceased to be a lien entirely, after Cooke paid the $10,000 and the New Jersey mortgages were satisfied, because, 1. The bond being signed by Cooke as a joint obligor, payment by him to the obligee extinguished the bond and mortgage, and the only remedy of Cooke was an action for the moneys paid. (*Reid* v. *McNaughton*, 15 Barb. 168, and cases cited.) 2. The evidence shows that it was understood by the parties as a payment, and not a purchase. Cooke charged the $10,000 in account, exhibit No. 10 (made out by Cooke,) and exhibit No. 14, (not objected to by Cooke.) Cooke never called on Beach to pay the mortgage, or took any measures to collect it for nearly twenty years.

VII. The referee erred in not ascertaining how the accounts stood, and if anything was due to the plaintiff in not giving him a judgment therefor. 1. It is claimed by the plaintiff that there is a large balance. 2. The referee was entirely in error in supposing that part of the complaint was abandoned.

VIII. Marvin's interest having been extinguished by the payment of the New Jersey mortgages, he was not a necessary or proper party.

IX. The referee erred in excluding the written statement of facts made out by Beach when in full health, and proved by him to be a true statement.

X. The general term had power in this case to modify the judgment rendered on the report of the referee instead of granting a new trial, and the judgment of the general term should be affirmed. 1. As the code is now amended, it authorizes the appellate court upon an appeal from a judgment or order to reverse, affirm or *modify* the judgment or order appealed from, and *if necessary or proper*, to order a new trial. (Code, § 330.) 2. The Court of Appeals, in several instances, has modified an erroneous judgment without granting a new trial. Thus, in *Tillou* v. *Kingston Mutual Ins. Co.* (5 N. Y. Rep. 405,) it modified the judgment by changing the amount. In *Fitzhugh* v. *Wiman*, (9 N. Y.

Rep. 559,) it modified the judgment by changing it from an absolute to an alternative judgment, in an action of replevin. 3. This was an equity action, and no order for the settlement of the issues and trial by jury having been obtained, neither party had any right to such a trial. (Code, 253, 254; Sup. Court Rule, 33.) 4. It being an equity action, and the right of trial by jury not existing, the practice should conform to the former practice in chancery which was for the appellate court not to grant a new trial or hearing in the court below, but to make a final decree disposing of the controversy as it stood upon the pleadings and proofs. 5. The facts in this case were found by the referee's report, to which no exceptions had been taken by the defendant, and the question passed upon by the Supreme Court was as to the proper judgment to be pronounced upon those facts. "When the facts are ascertained upon the trial, either by special verdict, *or any other form of finding allowed by law*, the general question, which party is entitled to judgment arises upon appeal, and in such cases *a judgment disposing of the whole cause may be given at general term, notwithstanding such judgment be adverse to that given at the special term.* But when the case is brought for review to the general term, upon an allegation of error in the trial—in the process of ascertaining the facts—the only judgment which can properly be given for the appellant is one ordering a new trial." (*Marquat* v. *Marquat*, 12 N. Y. Rep. 340.) In this case the Supreme Court placed its judgment upon "the general question which party is entitled to judgment" upon the facts ascertained by the referee's report, "a form of finding allowed by law." Where on appeal from a judgment entered on the report of a referee, no attempt is made to question the accuracy of the referee's conclusions of facts, the court should direct such judgment as the law pronounces upon the facts thus found. (*O'Shea* v. *Kirker*, 8 Abb. P. R., 69, N. Y. Superior Court.) When by the report of a referee the facts are correctly found, and

N. Y. R.—28.　　　　34

the error is one of law in giving the judgment, the court, on appeal, may give the judgment for which the referee should have reported, without setting aside the report in respect to the facts found. (*Hannay* v. *Pell*, 3 E. D. Smith, 432.) 6. The decree of the referee dismissed the complaint *absolutely*, while the modified decree only dismissed it *on condition.*

XI. In case this court should hold that the power of the Supreme Court only extended to the granting of a new trial, still, it is submitted that a decision by this court upon the merits is necessarily required in order to determine whether the judgment of the referee should be affirmed, or whether the judgment of the general term should be modified by merely reversing the judgment of the referee and ordering a new trial. In the language of this court in *Marquat* v. *Marquat*, "In this case, however, the question of law which formed the ground of the decision at general term, is one which would necessarily arise upon another trial, and which, therefore, it is proper to examine here. For if we should be of opinion that the judge at special term was right in his views of the law, the case can be finally disposed of by affirming the judgment at special term."

XII. The judgment of the referee should not be affirmed, for the following reasons : 1. On the grounds upon which the decision of the general term was placed, as contained in the opinion, and maintained in Points I, II, III, IV, V. 2. On the other grounds presented in Points VI, VII and IX.

XIII. The admission of Ephraim Beach as a witness, was correct; nor does his admission afford any reason against affirming this judgment. Should this court modify the judgment by ordering a new trial, it is desired that this question, which must then arise on a new trial, should be determined by this court. 1. Ephraim Beach was the grantor of the premises, but was fully released by the plaintiff. Notice also of his intended examination for more abundant caution had been given. 2. Before the rules enlarging the competency of

witnesses had been introduced by our code of procedure, Beach, the grantor, would have been a competent witness for his grantee in this action, under his release. (*Jackson* v. *Frost*, 6 John. 135; *Jackson* v. *Root*, 18 id. 60; *Van Hoesen* v. *Benham*, 15 Wend. 164; *Cunningham* v. *Knight*, 1 Barb. 399; *Holgate* v. *Palmer*, 8 Paige, 461.) On being released, he was competent against the mortgage, to prove payment—(this precise case.) (*McLaren* v. *Hopkins*, 1 Paige, 18.) 3. Any person who, by the rules of the common law, was not disqualified by interest, is not under the code disqualified by interest. It is not the object of the code to increase the grounds of incompetency. (*Wilmot* v. *Richardson*, 6 Duer, 330.) 4. Beach was received as a witness in 1855. Neither by the code as it then was, or as it now is, was he disqualified as a witness. As the code read in 1855, no person offered as a witness should be excluded by reason of his interest; but that provision should not apply to a *party to the action,* nor to any person *for whose immediate benefit* it was prosecuted or defended, nor to any *assignor of a thing in action* assigned for the purpose of making him a witness. (Code, § 398 [351 of 1848, and 352].) But *such assignor* should not be admitted against an assignee, or an executor or administrator, unless the other party to such contract or thing in action is living, nor unless ten days' notice of such intended examination of the assignor be given. (Laws of 1851, ch. 479, amending sec. 399.) None of these provisions apply to Beach. 1. He was not interested, after being released. 2. He was not a party to the action. 3. He was not an assignor of a *contract* or *thing* in *action,* but was the *grantor* in a *deed.* The referee held he was competent only to prove payment of the mortgage, but not to establish any demand due to him from Thomas B. Cooke in his lifetime. 4. Nor was the action prosecuted for his immediate benefit. Even if it had been an assignment of a thing in action, the fact that the assignment was made for the purpose of enabling an assignor to testify upon it, does not render him *incom-*

*petent,* but only affects his credibility. (*Vasseur* v. *Living-ston,* 4 Duer, 285; *Doyle.* v. *Daniels,* 2 E. D. Smith, 385; *Kerr* v. *Rice,* id. 387; *Beach* v. *Raymond,* id. 496; *Nelson* v. *Smith,* 3 Abb. Pr. 117.) To exclude him, it must appear that he remains interested in the event of the suit. (*H. & D. Plank Road Company* v. *Rice,* 7 Barb. 157; *Evarts* v. *Palmer,* Id. 178; S. C. 3 Code R. 51.) Beach being competent independent of the code, not one of these restrictions is applicable to this case. The present code (§ 399) confines the restrictions to a *party to the action.*

XIV. The objection that the plaintiff has no legal standing to entitle him to this relief is not available. 1. The plaintiff, as the owner of the fee of the land, had a right to redeem the mortgage, and to litigate the amount due upon it. It was of no moment to the defendant, for what consideration or for what purpose he obtained the fee. 2. Besides, the referee finds the fact of the conveyance of the land to the plaintiff by warranty deed without condition.

SELDEN, J. It is insisted by the defendant's counsel, that the plaintiff is not a *bona fide* purchaser of the mortgaged premises, and for that reason is incapable of maintaining this action. It is a sufficient answer to this position to say, that there is no finding of the referee, to the effect that the purchase by the plaintiff was not made in good faith; nor did the defendant's counsel ask the referee to find any such fact. All that appears in the report on the subject, is, that on the 15th day of June, 1853, Ephraim Beach conveyed the whole of the real estate described in the mortgage, by warranty deed, to the plaintiff. We must assume, from this finding, that the conveyance was made and received in good faith, and as we can review questions of law only, and not questions of fact, we are not required to look into the evidence to ascertain whether the referee would not have been justified in finding that the conveyance was obtained by the plaintiff in bad faith. The question of good faith, however,

in the sense in which it is presented here, does not appear to me to be material, provided the plaintiff has, in fact, the legal title to the land covered by the mortgage. He claims no prior equity against the defendant on the ground of being a *bona fide* purchaser. He stands upon his rights as the legal owner of the lands, subject to the mortgage, and if he is such legal owner, he has a right to maintain an action to compel the discharge of the mortgage if it be fully paid, or to redeem the lands from its lien if it be not paid; and it is wholly immaterial in this respect, in what manner, or for what consideration, or with what object, he acquired the title. The holder of the mortgage has no interest in this question. I have, however, looked at the evidence, so far as it is disclosed in the case, and can discover no ground for impeaching the good faith of the purchase by the plaintiff. He gave a mortgage for $25,000 to the grantor, in consideration of the conveyance, and there is nothing to show that he was advised of any special object on the part of the grantor in making the conveyance, or that he knew of the existence of the mortgage in question.

It is next insisted on the part of the defendant that no case was made by the plaintiff entitling him to equitable relief. That the only appropriate judgment upon the facts, as finally established, was that directed by the referee, dismissing the complaint, and leaving the defendant at liberty to commence an action to foreclose her mortgage if she saw fit.

The plaintiff stated in his complaint, that he was the owner of lands encumbered, as appeared by the records in the county clerk's office, by a mortgage of $52,000, and many years' interest; that the mortgage was held by the defendant and was fully paid; and he prayed to have it discharged upon the records. By her answer, the defendant claimed that there was due to her, upon the mortgage $10,000, and interest from 1839. After a very tedious trial, lasting more than five years, it is established by the report of the referee, that the statements of the plaintiff were all true,

except that a small sum, less than $1300, besides interest, remained due on the mortgage. It would certainly be a cause of reproach to the administration of justice, if on that state of facts the court could give no judgment except to dismiss the action, leaving the parties to repeat the same tedious process, in another form, before the controversy between them could be ended. The law, however, is not justly subject to any such reproach. Regarding this as an action *quia timet* merely, to remove the cloud of the mortgage from the plaintiff's title, upon the allegation that the mortgage was fully paid, it was entirely proper, when it appeared by the evidence that a balance remained unpaid, to grant the relief demanded by the plaintiff, *conditionally*, as was done by the court below. Judge Story, treating of the cancellation or delivery up of securities, says: "In all cases of this sort, where the interposition of a court of equity is sought, the court will, in granting relief, impose such terms upon the party as it deems the real justice of the case to require; and if the plaintiff refuses to comply with such terms, his bill will be dismissed. The maxim here is emphatically applied: he who seeks equity must do equity." (2 Eq. Jur. § 693; see also, §§ 705–707.)

The complaint, however, embraced not only the features of a bill *quia timet*, but also of a bill to redeem. The plaintiff alleged that the mortgage was paid, and demanded judgment that it should be canceled and discharged on that account; but it was also prayed that the balance, if any was due on the mortgage, should be ascertained and determined by the judgment of the court; and that the other demands of the plaintiff against the defendant should be applied to the payment of such balance, if sufficient for that purpose, and if not sufficient, then to the reduction thereof, and that the bond and mortgage, if thereby paid, be canceled and discharged, and that the plaintiff have judgment for the balance of his demands, if any; to which was added the general prayer for such relief as the nature of the case should require. The

plaintiff, therefore, contemplated the possibility of a balance being found due on the mortgage, and demanded such relief as would be agreeable to equity, on that state of facts. There is no express general offer to pay any balance which might be found due, but it was held, under the former system of pleading, that such an offer, in a bill to redeem, was not necessary, (*Quin* v. *Brittain*, Hoff. 353;) and it is certainly not indispensable now. Were such offer necessary, it might fairly be inferred from the offer to pay the amount due by the application of the balance of other accounts. The case, therefore, was in form one in which it was proper to allow the plaintiff to redeem, and I can discover nothing in his position to render such redemption unjust or inequitable. The judgment, as modified by the Supreme Court, terminates the controversy between the parties in regard to the mortgage, whether the plaintiff complies with the conditions imposed upon him or not. If he fails to redeem within the time appointed, the dismissal of his complaint as the consequence of such failure, operates as a foreclosure of the mortgage. (*Quin* v. *Brittain, supra; Bishop of Winchester* v. *Paine*, 11 Ves. 199.)

The principal remaining question which requires notice, arises out of the admission of the testimony of the mortgagor, to show payment of the mortgage. The defendant having neither appealed from the judgment rendered upon the report of the referee, nor made any case on his part, it is questioned whether the exceptions taken by him are available in her behalf upon this appeal. As a general rule, exceptions taken by the prevailing party, on a trial, are not available in the subsequent proceedings, on an appeal from the judgment by the unsuccessful party, where the prevailing party has not also appealed. Indeed such exceptions under ordinary circumstances, do not properly constitute any part of the case, on appeal. Under the circumstances presented by this case, however, the defendant could not have sustained an appeal, whether the decision of the referee admitting the

testimony now objected to was right or wrong. No appeal on her part could have raised that question, as she could appeal only from the judgment, and not from any decision of the referee, which did not affect the judgment; and the decision in question did not. She excepted to the testimony when it was given, but no use of it was made against her, and no judgment entered, by an appeal from which she could raise the question of the validity of her exception, until the judgment against her was pronounced by the Supreme Court, based upon the testimony thus excepted to. From *that* judgment she has appealed, and if the testimony was not legally admissible, it would seem to savor strongly of injustice, to deny to her the benefit of her exception. If it were necessary now to determine this question, I should hold, as at present advised, that the exceptions taken by the present appellant upon the trial, and appearing upon the record, are available to her upon this appeal. There will, however, be no necessity of deciding this question, if the court shall concur with me, in the conclusion to which I have arrived, that the testimony of the mortgagor was properly admitted.

The provisions of the statute, which were in force when the cause was tried, and which are relied upon, to sustain the objection to the testimony, are as follows:

"§ 398. No person offered as a witness, shall be excluded by reason of his interest in the event of the action.

§ 399. The last section shall not apply to a party to the action, nor to any person for whose immediate benefit it is prosecuted or defended. When an assignor of a thing in action, or contract, is examined as a witness, on behalf of any person desiring title through or from him, the adverse party may offer himself as a witness to the same matter in his own behalf, and shall be so received. But such assignor shall not be admitted to be examined in behalf of any person deriving title through or from him against an assignee, or an executor, or administrator, unless the other party to such contract or thing in action, whom the defendant or

plaintiff represents, is living, and his testimony can be pro-
cured for such examination; nor unless at least ten days'
notice of such intended examination of the assignor, specify-
ing the points upon which he is intended to be examined,
shall be given in writing to the adverse party." (Code of
Procedure, as amended in 1851, §§ 398, 399.)

There is no ground whatever for the position that the wit-
ness was rendered incompetent by the first clause of § 399.
He was in no sense a party to the action, nor was it prose-
cuted for his benefit. Whatever may have been the object,
or the consideration, of the conveyance of the land, by him,
he could not afterwards question the validity of such convey-
ance; and having no interest in land, and being released
from liability upon his covenants, he could not be benefitted
by the plaintiff's success. (*Jackson* v. *Stevens,* 16 John. 110 ;
*McCrea* v. *Purmort,* 16 Wend. 460.) Neither could the
record in this case, whatever its results, be made use of, for
or against the witness, in an action on his bond. *McLaren*
v. *Hopkins, supra.*)

The objection, based upon the other portion of § 399, is,
I think, equally untenable. The conveyance of land, is not
an assignment of "a thing in action or contract." (2 Bl.
Com. 397; 1 Chitty's G. P. 99, note p.; *Gillet* v. *Fairchild,*
4 Denio, 82; *Hudson River R. R. Co.* v. *Lounsberry,* 25
Barb. 597.) The case was, therefore, not within the letter
of the statute, and I am satisfied was not within the inten-
tion or object of its provisions. No inconvenience has ever
resulted from the common law rule admitting the testimony
of the grantor of lands as a witness under such circum-
stances, and I see no propriety in extending the statutory
exclusion to cases not clearly embraced by its terms.

If the plaintiff had not abandoned the claim to recover the
alleged balance of the assigned accounts, the testimony would
undoubtedly have been inadmissible, notwithstanding the
limitation placed upon its effect by the referee; because a con-
siderable part of it bore directly upon the question of such

balance, through the accounts which the witness proved. The referee could not, so long as the question of the general accounts was before him, render the receipt of such testimony rightful, by declaring that its application should be limited to another issue, in relation to which the witness was competent to testify. But this objection was removed when all claim to a recovery upon the accounts was abandoned. It has been questioned whether there was such an abandonment on the trial, but the report of the referee on that subject is conclusive here. The testimony of the mortgagor was therefore properly admitted.

It is insisted, that if the decision of the referee was in any respects erroneous, the Supreme Court should not have pronounced a final judgment on the appeal, but should have ordered a new trial. If any material error had occurred on the trial, or in the findings of fact by the referee, a new trial would doubtless have been necessary; but the only error appearing in the case, was in the judgment which he directed to be entered as the legal result from those facts. That error it was the province of the Supreme Court to correct; it has been corrected by the entry of the appropriate judgment, and that judgment should be affirmed, with costs.

DENIO, Ch. J. After an examination of this case, I have come to the following conclusions:

(1.) The complaint was sufficient to authorize a judgment allowing the plaintiff to redeem if a balance should be found due on the mortgage. The case made was undoubtedly, in one aspect, that of a full payment; but it was conceded that it would depend upon the proof and the state of the accounts, and impliedly that it might turn out that some amount less than that which the defendant claimed would appear to be unpaid. Hence one part of the prayer was that the balance, if the debt were not fully paid, might be ascertained and determined, and there was a prayer for general relief, such as might be agreeable to equity. After the trial, the plain-

tiff asked that a judgment for a redemption should be given in case the mortgage should not be found to be fully paid. When such a result was arrived at by the referee he should have adjudged that the plaintiff redeem or be precluded, according to the usual course in redemption suits, or in suits having a double aspect, looking to satisfaction or redemption as the case, on the accounts, should require. It follows that, if there were no other difficulty, the general term was right in pronouncing such a judgment as the referee should have given.

(2.) But the defendant's counsel insists that error was committed on the trial, on account of which the determination that only $1259.84 was due ought not to be sustained. The judgment of the special term being in the defendant's favor he could not appeal, and hence had no opportunity of reviewing the rulings upon which the alleged errors are predicated. Hence he urges that the general term, if it determined that the judgment on the report was wrong, should have awarded a new trial, in order that the questions which arose upon the testimony might be determined in such a manner that they could be reviewed by the general term, and in this court. The answer which the judges at the general term gave to this suggestion was, that the defendant might have appealed to the general term from the determination that only a certain amount was due, although the general judgment was in his favor. This answer is not satisfactory to my mind. No doubt a party may appeal from any separate part of a judgment which is adverse to him, though he may be satisfied with other portions of it. But I think this was not a case of that kind. Here the only judgment was in favor of the defendant, dismissing the complaint. It was no part of the adjudication that only a limited amount remained unpaid. That determination was in the finding, but was not one of the items of the judgment. It could no more be appealed from than any of the conclusions of fact or of law stated by the referee, or any of the reasonings of the

court. But I am of opinion that it was competent for the general term to have reviewed the case on the exceptions taken on the trial, and also upon the facts, so far as to determine whether the findings were warranted by the evidence, and that this court can review the case so far as questions of law were raised upon the trial, by the exceptions, although the defendant could not and did not appeal to the general term. Suppose the general term, upon an examination of the case, on the plaintiff's appeal, upon the view of its jurisdiction which I have suggested, had come to the opinion that although the judgment was not consistent with the finding as to the amount, yet that there were errors of law or fact of such a character that the finding ought not to be sustained, it would have been its duty to have refused to modify the judgment so as to allow a redemption. But it should have set it aside and have ordered a new trial, so that the question as to the amount due could have been tried and determined in a manner free from any just exception. If, on the contrary, the general term had considered that the trial had been legal and free from just exception, and that the determination of the question of fact was warranted by, and not against the weight of evidence, it would have been their duty to do what they actually did in the judgment before us, namely, modify the judgment so that it should conform to the legal result of the findings. The office and jurisdiction of the general term being such as I have stated, we are to assume that it found no error to exist in the trial; that the exceptions taken in the progress of it were not well taken; and that the conclusions of fact found were not against the weight of the evidence. The jurisdiction of this court is to review the determination of the general term upon all these questions, except as to the facts, or the conformity of the finding with the evidence. So far as the conclusions of fact are concerned the case ends with the general term, but as to the matters of law, we sit in review of its determination. It follows that we are bound to look into

the exceptions to the ruling of the referee, and to award a
new trial if any of them are well taken, and this is the only
remaining question in this case.

(3.) The defendant, on the trial, objected to the mainte-
nance of the action on the ground that the plaintiff did not
appear to be a *bona fide* purchaser of the mortgaged prem-
ises. There was a motion for a nonsuit on that ground,
which was denied, and the defendant's counsel excepted.
I see no reason to doubt but that, as between Ephraim
Beach and the plaintiff, the title to those premises passed
from the former to the latter by the conveyance executed
shortly before the suit was commenced. Although Ephraim
Beach admitted, in effect, in his testimony, that the convey-
ance was made to enable him to be a witness in the suit the
plaintiff was expected to commence to procure the satisfaction
of the mortgage, that was not a circumstance which could im-
pair the effect of the deed, as between the parties. If the plain-
tiff, by that conveyance, became the owner of the premises, as
he clearly did, he was entitled to all the legal and equitable
remedies which any owner would have to procure the removal
of an alleged incumbrance which was inequitably set up or
kept on foot against the land. Supposing this to have been
a deed of gift as between the parties, the defendant could
not question the consideration, for he had no more right
against a voluntary grantee than he had against the grantor.
Except as to the competency of the grantee as a witness, he
was not injured by having to contest the matter with the
plaintiff rather than with his grantor. I have looked into
the authorities cited to show that a person acquiring title
under such circumstances can not file a bill of this nature,
but I think they do not establish that position. The right
to redeem mortgaged premises, or to have a mortgage satis-
fied when the mortgage debt has been paid, is as absolute a
right as any known to the law, and it is not the less absolute
that it has to be asserted in a court of equity. But the
change of title to the mortgaged premises in this case let in

the grantor, Ephraim Beach, as a witness. If the law had determined that a party parting with title under such circumstances, with a design to give testimony for the grantee, in an expected controversy, would not be competent to give testimony for his grantor, of course the plaintiff would be beaten, unless he could prove his case by other testimony. But such a person is not, in law, incompetent as a witness, however strongly the circumstance may operate against his credibility. The case is not within the provisions of § 399 of the code, which forbids an assignor of a thing in action to testify on behalf of a person claiming title through him, where the other party to the contract is not living. That rule applied, as the referee held, to the assigned personal demands, but not to the land which was conveyed. The reason upon which that exception was founded would probably apply to a case situated like this. But the statute does not reach such a case, and the only advantage which the defendant could have from this peculiar feature of the transaction would be to question the credibility of the witness. We are to assume that the referee made all due allowance for that circumstance. The question on the merits was, whether the $10,000 of state stock was delivered to the testator, T. B. Cooke, under an agreement that the proceeds of the sale of it should be applied to the payment of the indebtedness secured by the mortgage, or whether it was delivered to him without such agreement, so that it would be applicable on the general accounts existing between these parties. The referee took the first mentioned view of this evidence, and accordingly applied the whole proceeds towards the extinguishment of the debt secured by the mortgage, irrespective of any other demands Cooke had against Beach. Whether this was right was a question upon the proof, which we can not go into. If it was not, by the agreement and understanding of the parties applicable specifically to the mortgage debt, then it could not be availed of by the plaintiff, except by way of set-off, or upon some principle of the implied appropriation of payments, and in

either case the whole of the accounts between the parties must have been examined. The plaintiff's counsel declined to go into the accounts, and the referee did not examine them, though there was evidence respecting them. He held that the evidence showed that the proceeds of the stock were, by the agreement of the parties, to be applied towards th indebtedness of $10,000 secured by the mortgage. Th whole question on the merits was, whether this conclusion was right. As we must assume it to have been correct, because we have no jurisdiction to review it, we can not do otherwise than affirm the judgment of the Supreme Court.

DAVIES, HOGEBOOM, and MULLIN, JJ. concurred.

INGRAHAM, J., (dissenting.) This case was referred to a referree to try the issues. Upon the trial the referee dismissed the complaint. The plaintiff appealed to the general term, which decided that the referee erred, and that upon the facts found by the referee the plaintiff was entitled to equitable relief, and after settling the amount due on the mortgage, gave a judgment allowing the plaintiff to redeem on payment thereof. It appears to me the general term had no authority to render such a judgment. By § 330 of the code the appellate court may reverse, affirm or modify the judgment appealed from, and may if necessary order a new trial, and by § 10 this power is conferred on the court of appeals. This is the extent of the power possessed by the appellate court. In this case the referee dismissed the complaint and rendered judgment for the defendant. This judgment the court could reverse, and if necessary could order a new trial, and they did reverse the judgment, because they set aside the dismissal of the complaint in favor of the defendant. But they went further, and rendered a judgment in favor of the plaintiff. Such a judgment was neither an affirmance or a modification of the original judgment, but a rendition of an entirely different judgment, in favor of another party. Such

a course must work great injustice to the party whose judgment is reversed. He may have exceptions to rulings upon the trial which he loses the opportunity of reviewing, and which may have excluded evidence that would have materially affected the decision. It is said he should have excepted and made his bill of exceptions if he wished to preserve his rights. But the successful party has no right to appeal. The 348th section of the code only allows an appeal from a judgment, and not for exceptions merely. The notion of a successful party appealing from a judgment in his favor might be very acceptable to his debtor against whom he had obtained a judgment, but not very beneficial to the creditor, who thereby would stay the collection of the debt due him, for fear his adversary might appeal and obtain a judgment in his favor. I doubt whether any court in this state would consent to hear argued a bill of exceptions where the judgment was rendered in favor of the party appealing. In *Astor* v. *L'Amoreux*, (4 Seld. 107,) this court held that the general term erred in reversing a judgment in favor of the plaintiff, and ordering judgment for the defendant. The same rule should be applied to this case. It becomes, therefore, necessary to inquire whether the referee erred in dismissing the complaint, in order to decide whether a new trial should be granted.

The complaint states facts, and asks for relief which could have been granted by the referee to the full extent to which the general term have rendered judgment in his favor, unless it be necessary for the plaintiff to tender the amount due before commencing his action.

The finding of the referee is that Ephraim Beach conveyed the whole estate to the plaintiff; that Beach resided on a portion of it, and received the whole of the rents and profits; but there is no finding that the conveyance was fraudulent, or that the plaintiff was not a bona fide holder. In the absence of any such finding we are bound to presume the contrary, and that the conveyance did in reality pass the title to

the plaintiff.    He was then, if a *bona fide* holder, entitled to the relief sought, and the referee should not have dismissed the complaint.    Upon the whole I think justice will be promoted by sending this case back to the referee for a new trial, to give the parties an opportunity to review the case after having the opinions of the courts above.    And in order that the proper judgment may be rendered by the referee, the judgment should be reversed, and a new trial ordered.

WRIGHT and JOHNSON, JJ., concurred with INGRAHAM, J.

Judgment affirmed.