MILLS *v.* VAN VOORHIES.

The wife of a mortgagor of land for the purchase money, whether she has or has not joined in the mortgage, has an inchoate right of dower in the equity of redemption which is not affected by a foreclosure to which she is not a party.

The object of the statute (1 *R. S.*, 741, § 5) was not to prescribe a different rule, but to prevent the claim of dower of a widow who did not unite in a purchase money mortgage from having preference to it.

The considerations which impose greater caution upon our courts than is required in England in adjudging partial performance of the contract for a sale where the inability of the vendor to give a good title prevents a complete performance, stated by SELDEN, J.

APPEAL from the Supreme Court. Action for the specific performance on a contract made in July, 1851, for the conveyance by the defendant to the plaintiff of fifty acres of land, now within the city of Brooklyn. The defendant was to give a deed with full covenants, conveying a perfect title. He tendered a deed good in form in November, 1851. The plaintiff objected to the title on this ground: The plaintiff had, in 1835, conveyed a portion of the land to one Hans Learned, receiving from him a contemporaneous mortgage to secure the purchase money, in which his wife (if he had one) did not join. Learned conveyed portions of the land thus granted to him to Gilman, Marston, Tripp, Lloyd and Smith, each of whom had a wife. Learned's mortgage was foreclosed by suit in Chancery, to which his grantees were parties; but their wives who were then living and who continued in life at the hearing of this suit, were not parties. The defendant had re-possessed himself of the title by purchase under this foreclosure; the master's deed to him bearing date July 8th, 1840. The plaintiff objected to the title, that the wives of Learned and his grantees were not barred of their contingent equities of redemption. The defendant insisted that this constituted no defect in the title. Various propositions were made with a view to overcome the difficulty; among others, that a new foreclosure of the Learned mortgage should be instituted: but the parties failed to agree in regard to it. The plaintiff requested the defendant to convey to him that portion of the premises to which his objection did not apply, he paying and securing in the manner stipulated by their contract a proportionate part of the price agreed to be paid for the whole. The defendant refused to accede to this proposition. The matter was under negotiation until April, 1852. This suit was commenced in July following. The complaint insisted that the title was defective, but prayed that the defendant be required to make it perfect.

The trial was before a referee, who held that the plaintiff's objections to the title were unfounded, but that by refusing to take a good title when tendered to him, and by refusing fair offers to indemnify him against the alleged defect, and by the lapse of time, he had lost the right to a specific performance; and he ordered a judgment denying a specific performance, but awarding restitution to the plaintiff of the money which he had paid towards the purchase of the land, with interest. Upon appeal the Supreme Court, at general term in the second dis trict, held the plaintiff's objection to the title well founded, but it affirmed the judgment entered on the referee's report, upon the ground that the defendant could not give a perfect title; though he might bring a suit to foreclose the wives of Learned and his grantees, he could not prevent them from redeeming if they saw fit; the plaintiff did not ask for such a title as the defendant could give, and the most he was entitled to was the relief awarded by the referee. The plaintiff appealed to this court.

*J. L. S. Cummins*, for the appellant.

*John K. Porter*, for the respondent.

SELDEN, J. It would not necessarily follow, even if all the objections originally taken by the plaintiff to the title of the defendant were unfounded, that a specific performance of the contract must be decreed. As, however, there is nothing in the case to impeach the good faith of the plaintiff, nor anything shown on the part of the defendant which would make it inequitable to compel a performance, it would seem that a court of equity, in the exercise of a sound discretion, would be called upon, if there is no defect in the title, to require the defendant to perform. The only objection not obviated by the proof given at the hearing, was that based upon the omission to make the widow of one person and the wives of others, interested in the premises as grantees of the mortgagor, parties to the suit to foreclose the mortgage given by Hans Learned

to the defendant. This was the only objection considered by the referee, or by the Supreme Court, and the only one which it is necessary to consider here.

The case does not show very clearly whether Learned, the mortgagor, had a wife; or if he had, whether she was made a party to the suit or not. But the mortgage having been given for purchase money, both the referee and the Supreme Court have assumed that the question whether it was necessary to make the wives of the grantees of the mortgagor parties, in order to cut off their equitable rights, is identical with the one whether it was necessary, if the mortgagor had a wife, to make her a party for that purpose. This assumption is no doubt correct to this extent, viz.: That if the dower rights of the wife of the mortgagor in the equity of redemption were such as to require that she should be made a party to the foreclosure, then for the same reason it would be necessary to make the wives of the grantees of that equity parties. The converse of the proposition, however, may not be, and I think is not, true. If it be unnecessary in such cases to make the wife of the mort-gagor a party, it is because the statute concerning mortgages for purchase money has made it so. This statute, however, does not extend to the wives of the grantees of such mortgagor, and can in no way affect their rights.

But as the conclusion to which I have arrived, as to the necessity of making the wife of the mortgagor himself a party, is decisive of this branch of the case, I will consider the question in the aspect in which it was considered by the court below Is it necessary then in foreclosing a purchase money mortgage, to make the wife of the mortgagor a party, in order to cut off her rights in the equity of redemption? 1. Would it be necessary, independent of the statute? 2. If so, does the stat-ute render it unnecessary? Whether at common law it would be necessary to make her a party, must depend upon the ques tion whether she has any interest, either legal or equitable, complete or inchoate, in the mortgaged premises. If she has such an interest, however remote, then upon the plainest and most familiar principles, that interest cannot be affected, unless

by virtue of some statute, by a suit in equity to which she is not a party. This is not only well settled by authority, but results from the simplest and most obvious principles of justice. The doctrine has been frequently applied to the inchoate rights of dower of a married woman. It was so applied in the case of *Wilkinson* v. *Parish* (3 *Paige*, 653), where it was held that the purchaser of premises sold under a decree for partition, takes the same subject to the right of dower of the wife of one of the tenants in common, unless the wife was a party to the suit.

It is entirely clear, therefore, that if the wife of one who owns real estate subject to a mortgage given for purchase money, has any inchoate dower rights at all, in respect to such property, these rights, unless by virtue of the statute, could not be affected by a foreclosure suit to which she is not made a party; and a purchaser under such a foreclosure would not obtain an unincumbered title. That she has rights of this description, under the principles uniformly applied to mortgages in this country, is, I think, too clear to be denied. It having been, for the last half century, the settled doctrine in this State that the mortgagor, notwithstanding the form of the instrument, is to be regarded as the real owner of the property, and the mortgagee, until he obtains possession, as having only a lien or charge upon it, the courts were bound in consistency to hold, as they have repeatedly held, that the dower rights of widows extend to equities of redemption. This has never been doubted since the days of *Hitchcock* v. *Harrington* (6 *John.*, 290), and *Collins* v. *Torry* (7 *John.*, 278). The same doctrines prevail in some if not all the other States. (*Fish* v. *Fish*, 1 *Conn.*, 559; *Snow* v. *Stevens*, 15 *Mass. R.*, 279; *Gibson* v. *Crehore*, 3 *Pick.*, 475.)

That a mortgagor, who has purchased land and given back a mortgage for the whole or a part of the purchase money, is the owner of an equity of redemption in the premises so purchased, will not be disputed; and there is not the slightest legal difference between this equity, so far as he is concerned, and one where the mortgage was given for borrowed money.

His rights in the property are in all respects the same, and the same proceedings are necessary to foreclose them. If, therefore, he is to be regarded as the real beneficial owner of the property in the one case, he is in the other; and it would seem plainly to follow, that if his widow is entitled to be endowed of this equity in the one case, she must be equally so in the other.

There is nothing in the case of *Stow* v. *Tifft* (15 *John.*, 458), which conflicts with this conclusion, even if the doctrine of that case could be sustained. When a married man, owning unincumbered real estate, executes a mortgage upon it, in which his wife does not join, as her inchoate interest in the property precedes that of the mortgagee, it seems perfectly just that her right, if not released, should be paramount to his. But where the purchase money has never been paid, and the mortgage is given for that, there is an apparent injustice in permitting the rights of the wife to prevail over the prior rights of the vendor; and it was to avoid this result that the late Supreme Court adopted the somewhat peculiar doctrine of the case of *Stow* v. *Tifft.*

It had been said in several old English cases that where the seizure of the husband was instantaneous only, as when the title was transferred to and from him at the same instant and by the same act, there no right of dower would attach, and it was upon the doctrine of these cases that the Supreme Court rested its decision in the case of *Stow* v. *Tifft.* On looking carefully into those old cases, however, it appears that in none of them was the conveyance intended to vest any beneficial interest in the husband; the object being in every case merely to transfer the title to, or perfect the title in, some other person. These cases, therefore, would seem scarcely to afford any solid foundation for that of *Stow* v. *Tifft.*

But that case, assuming it to have been rightly decided, has no bearing upon the point presented here. The question there was, not whether the widow was entitled to dower in the equity of redemption, subject to the lien of the mortgage, but whether her right of dower was paramount to the rights of the mortgagee; and whether she could recover her dower in

opposition to the mortgage, and without offering to redeem it. There is nothing in the case of *Stow* v. *Tifft*, or any other well considered case, nor in reason, to show that the wife or widow of one who has given a mortgage for purchase money, whether she has or has not joined in the mortgage, is not as much entitled to be endowed of the equity of redemption, that is of the interest justly and beneficially vested in her husband, as the wife of any other mortgagor. The only effect of the decision in *Stow* v. *Tifft* was to place the wife of one who had during coverture given a mortgage for purchase money, in which she had not joined, substantially in the same position as if the mortgage had been given for purchase money or any other indebtedness, before coverture, or as if she had joined in a mortgage for such indebtedness after coverture. A *feme covert*, who executes a mortgage jointly with her husband, is nevertheless entitled to dower in the equity of redemption, of which her husband is seised notwithstanding the mortgage; and this right, as we have seen, is not affected by a foreclosure in equity unless she is made a party. If omitted she can come in at any time afterward and redeem, notwithstanding a decree and sale in the foreclosure suit. It is the same under the decision in *Stow* v. *Tifft*, in case of a purchase money mortgage; although the wife may not have joined in such mortgage. At common law, therefore, aside from our statute on the subject, it is plain that a wife or widow, in such a case, must be made a party to a foreclosure suit, or her right to redeem the premises from the lien of the mortgage will remain unaffected.

Does the statute in question prescribe a different rule? Its language is this: "When a husband shall purchase lands during coverture, and shall at the same time mortgage his estate in such lands to secure the payment of the purchase money, his widow shall not be entitled to dower out of such lands, as against the mortgagee and those claiming under him, *although she shall not have united in such mortgage*, but she shall be entitled to her dower as against all other persons." (1 *R. S.*, 741, § 5.) It is manifest on the face of this provision, without the express declaration to that effect contained in the

Reviser's Notes, that its design was simply to confirm, by positive enactment, the rule adopted in the case of *Stow* v. *Tifft*, *supra*. The sole motive for that decision was, as we have seen, not to interfere with the widow's claim of dower in the equity of redemption, but to prevent that claim from having a preference over the mortgage when given for purchase money. The motive for the enactment was precisely the same; and the reason upon which both the decision and the statute were founded goes obviously no further. Care seems to have been taken in framing the statute thus to limit its effect. The words "although she shall not have united in such mortgage," plainly import a design to make the position of the widow, as to a mortgage for purchase money not signed by her, the same as in respect to any other mortgage which she had signed.

But it is said that the statute goes further than this, and denies to the widow all right to dower as against the mortgagee, and any person claiming under him. Hence, as every person deriving title under the foreclosure may be said to claim under the mortgagee, it is insisted that all claim to dower on the part of the widow, not only in the land at large, but in the equity of redemption, is cut off by such foreclosure, whether she is made a party or not.

The objection to this construction is, that it is inconsistent with the reason upon which the statute was *founded*, as gathered from the history of the law on the subject, as well as from the express declaration of the revisers; and inconsistent also with the object and intent of the statute, as plainly evinced by its phraseology in other respects. Parties obtaining title under the foreclosure, claim not only under the mortgagee but under the mortgagor also. They obtain the rights of both. So far as they claim under the mortgagee alone, they are protected by the statute against the widow, without her having been made a party. In that portion of the estate she has no interest. But in respect to the portion which, under the foreclosure, is obtained from the mortgagor, viz., the equity of redemption, in which she has an interest, her rights are not affected unless made a party.

This construction makes the whole law on the subject reasonable and consistent; while any other would produce manifest incongruity and injustice.

These views accord with, and are sustained by those expressed by both the vice-chancellor and chancellor in the case of *Bell* v. *The Mayor of New York* (10 *Paige*, 50), so far as that case involved the questions presented here. In that case, the foreclosure was not completed until after the death of the mortgagor; and hence, it did not become necessary to determine the effect of a foreclosure, in his lifetime. There is not the slightest reason, however, for giving to such a foreclosure any greater effect in cutting off the dower rights of the wife of the mortgagor, than to one which takes place after his death. The inchoate rights of the wife are as much entitled to protection as the vested rights of the widow. Neither can be impaired by any judicial proceeding to which she is not made a party.

If this reasoning is sound, it follows, that it was absolutely necessary to make the wives of the grantees of Learned parties to the foreclosure suit, in order to cut off their inchoate rights of dower. The wives of the grantees of a mortgagor have the same rights of dower in the equity of redemption, as the wife of the mortgagor himself. The cases of *Collins* v. *Torry* (7 *Johns.*, 278), and *Snow* v. *Stevens* (15 *Mass.*, 279), are both cases of this description. The plaintiff in each was the widow, not of the mortgagor himself, but of a grantee of such mortgagor; and in each, she was held entitled to dower in the equity of redemption. These are leading cases in the respective States, and have been repeatedly ratified and approved by the courts of both.

The necessity of making the wives of the grantees of Learned parties, therefore, in order to foreclose their rights, is clear. The defendant, therefore, has not a perfect title, nor would a foreclosure of the Learned mortgage necessarily give him such a title; as the grantees' wives, not made parties to the first foreclosure, would have a right to come in and redeem. The plaintiff cannot, therefore, have a judgment or decree for a complete performance.

But he insists, that if he has not made a case for a full and complete performance, he is nevertheless entitled to a judgment, that the defendant convey such title as he has, with compensation for the defects, and he asks for such a judgment

It is quite clear, that this is not a case for compensation. It would obviously be entirely impracticable to arrive at any reasonably accurate estimate of the defects in the defendant's title, or to ascertain what sum would be an adequate compensation for them; depending as they do, upon the deaths of a number of individuals; upon the survivorship of their respective wives; upon the time when, if ever, their rights of dower shall accrue, and many other contingencies, too uncertain to be capable of even a proximate estimation. Again, the contract requires the defendant to give a deed with covenants; and it would be necessary to modify these covenants, so as to exempt the defendant from liability for any failure of title, growing out of the defects compensated for; which would still further complicate the case. For these and other similar reasons, which might be suggested, no judgment for compensation could, with propriety, have been given by the court below, even if the plaintiff had asked for such a judgment upon the trial, and had furnished the court, so far as practicable, with the necessary facts upon which to predicate it.

The plaintiff, however, further asks, if the opinion of the court should be against him upon the two points already considered, that the defendant be required to convey that portion of the premises to which he has a perfect title; and offers to accept of such a conveyance.

The Court of Chancery in England, has frequently exercised the power here sought to be invoked, and our courts have in some instances followed their example. But it is obvious, that in this country, where the value of real estate is so fluctuating, changing, not unfrequently, from day to day, the practice of making such decrees, if generally adopted, would give to the purchasers of such property great advantages over their vendors. By availing themselves, as in this case, of some defect in the title to a portion of the premises, they might keep the

Mills *v.* Van Voorhies.

matter in abeyance perhaps for years, secure against loss, in case of a fall, but ready to avail themselves of any rise in the value of the property. Although, therefore, the power of making such decrees no doubt exists, it should, in this country at least, be exercised with great deliberation and caution.

In the present case, however, I feel bound to say that I see nothing in the facts developed which throws the least suspicion upon the fairness and good faith of the plaintiff; and I should feel strongly disposed to grant him the relief sought in this last request, if it could be properly given in the present position of the case. It is of no consequence that no such offer is made or relief asked in the complaint. But the difficulty is, that no such ground was taken or suggestion made at the trial. Very many circumstances might exist, which would make it highly inequitable to make such a decree. The relative value of the different portions of the property may have entirely changed. The delay may have wrought inevitable changes, in the relation of the whole or of parts of the premises, to the defendant's other property. Valuable improvements may have been made under circumstances which would justify them. The defendant was clearly entitled to an opportunity to prove any circumstances of this nature, which might have existed; and as no such decree could be made unless asked for by the plaintiff, the defendant was not called upon to offer the proof, unless such a request was made. It is plain that no such decree can be made, without giving to the defendant an opportunity to adduce proof on this subject. What the plaintiff asks therefore is, in substance, that the judgment be reversed to enable him to make this additional offer and claim, notwithstanding no error was committed by the referee in disposing of the case as it was presented before him.

These views, in which Judges ALLEN and GRAY concur, would lead to an affirmance of the judgment. But one of my associates, Judge STRONG, is of the opinion that it was unnecessary to make the wives, either of Learned himself or of his grantees, parties to the foreclosure, and is in favor of reversing the judgment for that reason. The other four, viz.: JOHN-

SON, Ch. J., and COMSTOCK, DENIO and GROVER, Js., while they concur in holding that the wife of Learned, if he had a wife, and the wives of his grantees, should have been made parties, in order to cut off their rights in the equity of redemption, and that the title of the defendant is defective in consequence of the omission to make them so, nevertheless think, inasmuch as the referee decided that the defendant had a perfect title, and that the plaintiff was in fault for not having accepted the deed when tendered, that the case has never been fully considered in its other aspects; and that there ought to be a new trial, to give the parties an opportunity to present the facts and equitable considerations bearing upon the plaintiff's claim to partial relief, and to have the same deliberately passed upon by the Supreme Court.

The judgment, therefore, must be reversed, and there must be a new trial, with costs to abide the event.

Ordered accordingly