[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 558 
In a loose and general sense the equity of this case is on the side of the defendant, because he made the subsequent advance of $180, it being agreed that this, as well as the original sum of $200, should be considered as secured by the mortgage. The question, however, is, whether the rules of law will give that effect to the transaction.
It will be convenient first to determine the legal construction and effect of the mortgage, unaided by the parol facts, but read in connection with the bond to which it is collateral. On the part of the defendant it is contended that the two instruments, constituting, as they do, a single security, are to be read as one, and, therefore, that the new advance, being written in the *Page 559 
condition of the bond, is to be deemed actually incorporated in the condition of the mortgage also, so as to render the latter a legal security for both the sums in question. This proposition does not require, nor does it admit, any aid from the understanding of the parties derived from the extrinsic evidence. If it be a sound one, it is universally sound; so that, if a bond be given for $2,000 actually loaned, and a mortgage collateral thereto be given for $1,000, the latter is always to be read and construed as a security for the larger sum. The instrument being legally perfect, there is no occasion to reform it, or to involve the doctrine of equitable lien, of specific performance, or any kindred doctrine of equity.
I think this proposition cannot be maintained. A bond and mortgage are two instruments, although one may be collateral to the other. The one is a personal obligation for the debt: the other creates a lien upon land for the security of that debt, and it may well be for a portion of the debt instead of the whole. If the personal obligation expresses two sums, and the collateral instrument expresses only one of them, I see no reason why each should not be construed according to its own terms. So, if the condition of a bond be for a larger, and that of the mortgage be for a smaller sum, the obvious effect of both the instruments is that the maker binds himself generally for the whole debt, while he specially pledges the mortgaged land for only a given part of it. In this case the written condition of the bond is to pay $200, and the further sum of $180; while that of the mortgage is only to pay the $200. Each instrument is perfect, and each admits of a plain construction and effect according to its own language. If we do not look outside of them, there is no ambiguity. A debt was created, consisting of two sums. The land was mortgaged for one of those sums only.
In the next place, if the doctrine were admitted that a mortgage passes the freehold or legal estate in lands, it would probably follow that a parol agreement that the security should stand for a new advance would be good against the mortgagee or any one claiming under him not having the rights of bona *Page 560 fide purchasers. The title being conveyed by the instrument, the equities of the parties might be adjusted or modified by any new agreement without a writing. But it is entirely settled with us that such is not the nature or effect of a mortgage. With us a mortgage is a lien or security only, and not in any sense a title. (Kortright v. Cady, 21 N.Y., 343, and cases cited.) This ground of sustaining the defendant's lien for the additional advance, therefore, cannot be maintained. The defendant has no title to the land in question; and we have already seen that he has no legal mortgage for a greater sum than $200.
At the commencement of this suit the defendant was proceeding to foreclose his mortgage, by advertising to sell the premises under the power of sale contained in the instrument; and he claimed in his notice both the sums of money in question. The plaintiff, before instituting the suit, tendered the sum of $200 secured by the mortgage, according to its terms, with the interest, and the costs which had accrued. From what has been said, it follows that this tender extinguished the lien and the power of sale, and that a sale afterwards made under the power would be a nullity. (Kortright v. Cady, supra.) Of course, we now speak of the lien as a legal one, expressed in the mortgage, and having no other existence.
It is claimed, however, that the defendant acquired some equitable lien or right to charge the new advance upon the land, and that, although such a lien or right cannot be enforced in the manner attempted, because there is no legal power of sale to enforce it, yet, as the plaintiff asks the interference of a court of equity, he must do all that equity requires as the condition of relief: in other words, he must offer to pay the whole debt in specie to the plaintiff. The argument may be sound if the defendant did acquire any such equitable title or right: and this is the next subject of inquiry.
In England it has long been held that a deposit of title deeds by a debtor with his creditor is evidence of a valid agreement to give a mortgage, which agreement is enforced by treating the transaction as an equitable mortgage. It has always been *Page 561 
admitted by English jurists that this doctrine contravenes the statute of frauds, although it has become well settled in the jurisprudence of that country. (4 Kent Com., 151.) It is confined there to the precise case of a deposit of title deeds. A mere parol agreement to make a mortgage, or to deposit deeds, does not create an equitable lien. In this State the doctrine is almost unknown, because we have no practice of creating liens in this manner. Equity, however, here as well as there, does sometimes specifically enforce parol agreements which are within the statute of frauds; and I see no reason to doubt that such an agreement to make a mortgage may be enforced when money or value has been parted with on the faith of it, and the circumstances are such as to render it inequitable to refuse the relief. But, in the present case, the precise difficulty is in the absence of any such agreement. The defendant had loaned $200, and held a mortgage for that amount. He then advanced another sum; but there was no agreement to make another mortgage, or to change, in any respect, the terms of the one already made. The additional sum was inserted in the bond, with an understanding thereby that the mortgage should be "considered" as a security for that sum also. The instrument, as it was made, was a plain security for $200; and no change in its terms was contemplated. Nor is there the least pretence that any writing was to be executed creating a special security for the new advance. Now, a loan of money, with a mere understanding that the land of the borrower is a security for the debt, does not create a mortgage, legal or equitable. If it be specifically agreed to execute a legal mortgage, a very different question arises. The deposit of title deeds is evidence of such an agreement. But here there was no agreement to do anything which was not actually done. Consequently, if enough was not done to create a mortgage, then none was created. There is no room for the doctrine of specific performance, because there is nothing unperformed. The parties may have misunderstood the effect of what they did; but nothing in the transaction was left unfinished of which equity can now decree the complete execution. *Page 562 
The question, then, is upon the legal interpretation and effect of the acts done, which, as we have seen, failed to create a lien. The understanding and belief of the parties do not change the law.
For analogous reasons I do not see that the defendant can derive any aid from the doctrine of reforming contracts in equity. If a writing does not truly express the agreement of the parties; if anything was omitted which was agreed to be inserted; or if anything be inserted contrary to their intention, equity will relieve against the mistake by reforming the contract. But in this case no mistake is alleged or proved. Everything agreed upon was done. The subsequent advance of money was to be inserted in the condition of the bond, and it was inserted accordingly. There was no agreement to make a new mortgage, or to change the terms of the existing. It is said the understanding of the parties was that the mortgage should secure this advance also; but it is not pretended that this understanding was to be expressed in any form of writing. If A should loan money to B, and take a bond with the understanding that the farm of the latter should be considered a security, but with no intention or agreement to make a mortgage or writing of any sort, as the law requires, in order to create the lien, none would be created at law or in equity. The transaction, in judgment of law, would amount simply to a loan upon the bond of the borrower. Such, I think, in substance, was the transaction in question. There was no mistake, unless it be in misunderstanding the legal effect of what was said and done. But even this is not alleged. It is not stated or proved that the parties believed or understood that the insertion of the new loan in the bond had the effect in law of enlarging the mortgage also.
Will a court of equity, then, make a new contract for parties in order to effectuate a mere understanding where no agreement is pretended different from the one which the writing already expresses, and where there are no circumstances of surprise, imposition, fraud, or misplaced confidence? To do so, I think, would be taking a step in advance of the settled *Page 563 
rule on the subject, especially if the relief sought be in direct opposition to the statute of frauds. In the case of Hunt v.Rousmaniere's Executors (1 Peters, 1), the general intention of the parties was to effect a security upon a ship at sea equivalent to a mortgage or bill of sale. With that design, a power of attorney to sell was executed, which, as they understood and were advised, accomplished the object in view. As a power merely, the instrument was revoked by the death of the party who signed it, and a bill was filed to reform the writing so that it might stand as a security according to the intention. It was adjudged, in the Supreme Court of the United States, upon the fullest consideration, that the bill could not be maintained — the ground of decision being that the court could not make an agreement of a different tenor and effect from the one which the parties themselves had intentionally entered into. The case before us seems to me still weaker in its circumstances, because not only was there no agreement for a better security than the defendant actually received, but it does not even appear that he acted under any mistake as to the legal effect of the transaction. The new advance of money was inserted in the bond; but there is no pretence of a belief that this, in any respect, affected the mortgage. There was a parol agreement that the mortgage should be considered as a security also for the sum thus inserted. The other party might give effect to this agreement in any suit or proceeding against him to foreclose, if he voluntarily chose to do so. But it is not alleged that, under a mistake even of the law, this agreement was supposed to be of any binding force or effect. On the whole, I am of opinion that the defendant's lien, whether viewed at law or equity, was only for the original sum of $200, and, consequently, that the judgment of the court below is right.
DAVIES and MASON, Js., dissented; HOYT, J., did not sit in the case.
Judgment affirmed. *Page 564