By the Court.—Freedman, J.
It is the settled law of this State that the legal ownership of land mortgaged, is not, as in England, vested in the mortgagee, subject to be defeated by the performance of the condition. The mortgage is a mere lien or security for debt, and not, in any sense, a title. The debt, in the eye of the law, is the principal, and the landed se *76 curity merely appurtenant and secondary (Kortright v. Cady, 21 N. Y. 343 ; Stoddard v. Hart, 23 Id. 556).
A mortgagee cannot, in any way, convey, devise, mortgage or incumber* the land ; while the mortgagor can do all these things. Judgments against a mortgagee, which are a lien on all legal estates, do not affect his interest in the land mortgaged. Such interest does not descend to his heirs, but goes to his personal representative as a chose in action; it is not subject to dower or curtesy; it passes by a parol transfer, and by any transfer of the debt, and finally it is extinguished by payment, or by whatever extinguishes the debt (3 Johns. Cas. 329 ; 1 Johns. 590 ; 4 Id. 42 ; 7 Id. 278 ; 15 Id. 319 ; 2 Paige, 68, 586 ; 5 Wend. 603 ; 2 Barb. Ch., 119).
Formerly, it is true, the mortgagee could maintain ejectment against the mortgagor, until the Revised Statutes abolished that remedy in such a case (2 Rev. Stat. 312, § 57 ; 3 Id. 5 ed. 509, § 50).
But even that right was, in this State, but a right to recover the possession of the property pledged for the purpose of paying the debt. So, the right still existing in a mortgagee in possession, to defend himself against an ejectment by the mortgagor, is but a right to retain the property pledged until satisfaction of the debt. It is but the incident of the debt, and has no relation to a title or estate in the lands. Such possession (if obtained with the assent of the mortgagor), is a just and lawful possession like the possession of any other pledge : but when its object is accomplished, it is neither just nor lawful for an instant longer. The possessory right instantly ceases, and the title is, as before, in the mortgagor without a reconveyance (21 N. Y. 343, per Comstock, J.
But without such assent, the mortgagee cannot take possession. The mortgagor in possession is considered the real or legal as well as the equitable owner of *77 the freehold, and as such, is entitled to the possession and to the rents and profits up to the time the purchaser under a foreclosure becomes entitled to the possession (Clason v. Corley, 5 Sandf. 447). Indeed, he may maintain trespass against the mortgagee, or a person acting under his license (Runyan v. Mersereau, 11 Johns., 534).
A mortgagee out of possession can only proceed to foreclose his lien, either by action or under the statute (2 Rev. Stat. 545, and acts amendatory of the same), and the mortgagor may redeem the land from the lien of the mortgage even after default in the payment on the day appointed (18 Johns. 110 ; 28 Wend. 541) ; and tender of the amount due at any time before foreclosure, though made after the law day and not kept good, discharges the lien (Kortright v. Cady, 21 N. Y. 343).
This right to redeem is technically called the equity of redemption. At common law, upon the execution of a mortgage, the legal estate vested in the mortgagee, subject to its being defeated on performance of the condition by the mortgagor. To divest the estate of the mortgagee, it was necessary for the mortgagor to make payment at the day, according to the condition of ¿he mortgage. If he failed to do so, the estate became forfeited. This appointed day for the payment of the money, to secure which the mortgage was given, became known in legal parlance as the law day. But in the eye of equity, the absolute forfeiture of the estate, whatever might be its value, on the breach of the condition, was regarded as a flagrant injustice and hardship, although perfectly accordant with the system on which the mortgage itself was grounded. The courts of equity, therefore, stepped in to moderate the severity with which the common law followed the breach of the condition. Leaving the forfeiture to its legal consequences, they operated on the conscience of *78 the mortgagee, and acting- in personam, and not in rem, they declared it unreasonable that he should retain for his own benefit what was intended as a mere pledge ; and they adjudged that the breach of the condition was in the nature of a penalty which ought to be relieved against, and that the mortgagor had an equity to redeem on payment of principal and interest and costs, notwithstanding the forfeiture at law. Thence grew up the system in England of filing bills in equity to redeem, and in this State the filing of bills in equity by the mortgagee to foreclose and cut off this right of redemption in the mortgagor (21 N. Y. 346, per Davies, J.).
From this it will be seen that the term “ equity of redemption,” although still in use, really belongs to a systém of law which is entirely different from ours. With us, this so-called equity of redemption is deemed to be the real and beneficial estate, tantamount to the fee at law, and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute state of inheritance at law in the mortgagor (4 Kent Com. 159). It is also subject to dower (2 Bosw., 524 ; 10 Abb. Pr. 152 ; S. C., 20 N. Y. 412); and under the Revised Statutes vendible as real property on an execution at law, although it cannot be sold under a judgment at law for a mortgage debt (2 Rev. Stat. 368 ; 3 Id. 5 ed. 649, § 45).
At any time (within the period of limitation hereafter mentioned) before the equity of redemption is absolutely barred and foreclosed, the mortgagor is entitled to redeem the mortgaged premises and thus clear them from the incumbrance upon them, and this right extends to his grantees, assignees, heirs, devisees, and every other person who has acquired any interest in, or a legal or equitable lien upon the land, and, therefore, a tenant for life, a tenant by the curtesy, a jointress, a tenant in dower in some cases, a reversioner, a *79 remainder-man, a judgment creditor, and every other incumbrancer, unless he be an incumbrancer pendente lite, may insist upon a redemption. A wife, having an inchoate right of dower in the equity of redemption, even where a mortgage is given for a portion of the purchase money, may, on the death of her husband, redeem the premises by payment of the mortgage debt, and a foreclosure of the mortgage in the lifetime of her husband, by a suit in which she was not a party, will not cut off her right of redemption (2 Bosw., 524 ; 10 Abb. Pr., 152 ; S. C., 20 N. Y., 412).
The right to redeem is a right inherent in the land, binding all persons coming in under .the mortgagor (1 Pow. on Mort., 251). It is a valuable right, of which no one can be deprived against his consent, without due process of law, affording him an opportunity of exercising it if he deems it advantageous to his own interest. A foreclosure of a mortgage, either by action or under the statute, and the deed executed to the purchaser in pursuance thereof, are, .therefore, a bar only between the parties to the action or proceeding. As to any other person having a right to redeem and not made a party, it is a nullity. As against such party, the mortgagee (or purchaser at the sale who succeeds to his rights) acquires, ppon obtaining possession of the premises in a manner binding upon the owner of the fee, the rights of a mortgagee in possession only, with a mere lien fór the mortgage debt, and is liable, consequently, to account for the profits (Brainard v. Cooper, 10 N. Y. [6 Seld.], 356 ; Peabody v. Roberts, 47 Barb., 91 ; Winebrener v. Johnson, 7 Abb. Pr. N. S., 202); and such party is entitled to redeem, upon payment of the mortgage debt, principal and interest, without paying the cost of the previous foreclosure (Gage v. Brewster, 31 N. Y., 218). This rule is adhered to, notwithstanding the fact that, as a general rule, a decree of foreclosure, which is binding *80 ■upon the owner of the fee, extinguishes the mortgage, and that after a sale in pursuance of the decree, neither the mortgage nor the judgment is any longer a lien upon the premises.
But, if the foreclosure be null and void as against the owner of the fee, by reason of such, owner not having been made a party, the mortgagee (or purchaser at the sale who succeeds to his rights) cannot take possession under the deed founded upon such void foreclosure, except with the assent of such owner. If he enter without such assent, he may be treated as a trespasser, and as such, he has not the power to confer, by a subsequent grant in fee of the land itself, upon his grantee, the rights of a mortgagee in possession.
From this it follows that any mortgagee or person standing in his place, who has obtained the possession of the mortgaged premises, either with the assent of the owner of the fee, or in any manner which is binding upon such owner, is, as long as the latter’s right to redeem exists, but the bailiff of such owner, and can do no more than a bailiff or steward. His possession is that of the owner, and consequently he can acquire no right during that time founded upon such possession wherewith to commence an adverse possession (Chalmers v. Wright, 5 Robt. 712 ; 1 Hill. on Real Prop. 4th ed., 587, § 21).
As long as the legal title remains in the owner of the equity of redemption, the occupation of the land by another will be presumed to be under the legal title, and one setting up an adverse title must, therefore, show that he occupied the premises under a claim of title hostile to such legal title, and exclusive of any other right (Code, §§ 81, 82, 84). For these reasons I cannot perceive how a mortgagee or one standing in his place can, during the existence of the owner’s right of redemption, enter into adverse possession of *81 vacant lots, short of an actual, visible and notorious occupation of the lots under claim of having the entire title to them exclusive of any other right. It is not necessary, however, to determine here in what particular manner a mortgagee in possession for more than twenty years might maintain a claim of adverse possession.
But although the right of redemption is held to be an inseparable incident to a mortgage, and, in accordance with the maxim “once a mortgage, always a mortgage,” all restrictions or qualifications of this right are deemed utterly void, it may be barred by the length of time. The power of enforcing it is an equitable power residing in courts of equity jurisdiction, and is exercised upon equitable principles (Beach v. Cooke, 28 N. Y. 508). In the absence of express statutory provisions to the contrary, the courts formerly preserved the analogy between the right in equity to redeem and the right of entry at law, so that the mortgagor who came to redeem against a mortgagee in pos-» session, after the period of limitation of a writ of entry, had to bring himself within one of the exceptions which would save the right of entry at law, or the time was considered a bar to the redemption, for the reason that such lapse of time raised a presumption that the right to rfedeem had been abandoned and a release of the equity of redemption to the mortgagee executed. Judge Story, in the second volume of his Equity Jurisprudence (p. 370, § 1028), says: “In respect to the time -in which a mortgage is redeemable, it may be remarked that the ordinary limitation is twenty years from the time when the mortgagee has entered into possession after breach of the condition under Ms title, by analogy to the ordinary limitation of writs of entry, and actions of ejectment. If, therefore, the mortgagee enters into possession in his character as mortgagee, and by virtue of his mortgage alone., he is for twenty *82 years liable to account, and if payment be tendered to him, he is liable to become a trustee of the mortgagor, and to be treated as such. , But if the mortgagor permits tbe mortgagee to hold the possession for twenty years without accounting, or without admitting that he possesses a mortgage title only, the mortgagor loses his right of redemption, and the title of the mortgagee becomes as absolute in equity as it previously was in law. In such a ca,se, the time begins to run against the mortgagor from the moment the mortgagee takes possession, in his character as such. And if it has once began to run, and no subsequent admission is made by the mortgagee, it continues to run against all persons claiming under the mortgagor, whatever may be the disabilities to which they may be subjected.” I may remark here, that this rule has been entirely superseded in this State by the provisions of the Code, which prescribe, with clearness and precision, not only the manner in which an adverse possession must commence, and the .cases in which it may be maintained and defended, but also the time within which all actions must be commenced.
The first attempt to regulate limitations in equity, which had' been adopted by courts of equity as a rule of decision, and as a guide to their discretion, by express enactments, was made by the Revised Statutes, the provisions of which, so far as they were not then already in force, severally took effect as laws, on January 1, 1830 (1 Edm. Stat., 69, and see reviser’s notes in same ed., vol. 6, p. 505). In all cases of concurrent jurisdiction, in the courts of law and of equity, the statute of limitations was declared to apply equally to both courts. But suits over the subject matter of which a court of equity had peculiar and exclusive jurisdiction, and which subject matter was not cognizable in the courts of common law, were excepted therefrom, and in all such cases, the limitation of bills *83 for relief on the ground of fraud, was fixed at six years after the discovery, by the aggrieved party, of the facts constituting the fraud, and in all the other cases not specially provided for at ten years after the cause accrued (2 Rev. Stat. §§ 49-52). This statute, says Kent, in his Commentaries, seems to reduce the right to redeem from twenty years, as it before stood, to ten (4 Kent Com. 10 ed. 222, * 188).
By the Code, which conferred law and equity jurisdiction upon the same tribunals, all provisions contained in the Revised Statutes relating to the time of the commencement of actions were repealed, and those of the Code (§§ 73 to 110) substituted in their stead.
Section 69 of the Code abolishes the distinction between actions at law and suits in equity, and the forms of all such actions and suits in existence before that time, and prescribes that “there shall be in this State, hereafter, but one form of action for the enforcement or protection of private rights, and the redress of private wrongs, which shall be denominated a civil action.”
This section does not abolish the action itself, as a remedy at law, or a suit, as a means of seeking relief in equity, nor does it aim at destroying the substantial differences which always existed between legal and equitable proceedings and remedies. The mere formal differences are abolished, but the principles by which the rights of the parties are to be determined, remain unchanged. The Code has given no new cause of action. In some cases, parties are allowed to maintain an action, who could not have maintained it before ; but in no case can such an action be maintained, where no action at all 'could have been maintained before, upon the same facts. If, under the former system, a given state of facts would have entitled a party to a decree in equity in his favor, the same state of facts now, in an action prosecuted in the manner prescribed by the Code, will entitle him to judgment to the same effect. *84 If the facts are such that at the common law the party ■ would have been entitled to judgment, he will, by proceeding as the Code requires, obtain the same judgment (Cole v. Reynolds, 18 N. Y. 74).
Section 74 of the Code enacts, that civil actions can only be commenced within the periods prescribed in' this title, after the cause of action shall have accrued, except where, in special cases, a different limitation is prescribed by statute, &c.
There being no forfeiture of the mortgaged estate on the law day under our system, an action to redeem mortgaged premises is simply an action for permission to pay the debt, to extinguish the lien, and for such further special relief, including the recovery of the possession, as circumstances may call for. It is an action for equitable relief, and, in my judgment, comes both within the letter and spirit of section 97, which prescribes that an action for relief not hereinbefore provided for, must be commenced within ten years after the cause of action shall have accrued. Actions to redeem are, in that respect, similar to actions for the specific performance of contracts, which must be brought in equity, and for that reason, must be commenced within ten years after the cause of action has accrued (Bruce v. Tilson, 25 N. Y. 194 ; Peabody v. Roberts, 47 Barb. 102, 103).
' It is important, therefore, to ascertain at what par- . ticular time a cause of action cognizable in equity may be deemed to accrue. The rule of courts of equity is, that the cause of a-ction or suit arises when, and as soon as, the party has a right to apply to a court of equity for relief (2 Story Eq. Jur. § 1521, a).
The same rule was laid down in Bruce v. Tilson, (25 N. Y., 194). Justice Allen, who delivered the ' leading opinion in that case, demonstrated very clearly, among other things, that a request • made by action and an averment of readiness and willingness on the part *85 of the plaintiff to perform, is sufficient, and that a demand upon the defendant before suit brought, accompanied by an offer by pláintiff to perform on his part, is only important in reference to the costs of the action, but has no bearing upon the merits or the rights of the parties. Costs in equity are always in the discretion of the court, and whether they are granted or withheld they are but as incidents to and no part of the relief sought. A party getting the relief asked may even be compelled to pay costs.
In Beach v. Cooke (28 N. Y. 508, 535), Selden, J., went still further, and held that under our former system of pleading it was not necessary that a bill to redeem should contain an offer to pay any balance which might be found due, and that such offer is not indispensable now.
In Oakes v. Howell (27 How. Pr. 145), it was held that an action to reform a sealed contract or instrument in writing for the sale of lands, on the ground of mistake, accident or inadvertence, there being no fraud, is barred by the ten years’ statute of limitations, from the time the cause of action accrued, immediately after the execution and delivery of the contract, and not upon the discovery of the mistake or accident.
In accordance with the principles decided by these cases, a mortgagor’s cause of action and right to redeem must, as a general rule, be deemed to accrue, both under the Code and the Revised Statutes, at the time the mortgage becomes due and payable. The rule laid down by Justice Story, in the second volume of his Equity Jurisprudence (p. 370, § 1028), to the effect that the limitation runs from the moment the mortgagee takes possession in his character as such, which was applied by the courts of equity in the absence of a statutory regulation upon the subject, can, therefore, notwithstanding a doubt has been expressed upon this point in a note by Judge Comstock, to his edition of Kent (4 Kent Com. *86 11 ed., p. 213-215, note 1), be followed no longer. In Roberts v. Sykes (30 Barb. 173 ; S. C., 8 Abb. Pr. 345), it was held, that where stock is pledged as se • cnrity for the payment of a note, the pledgor’s equitable action to redeem the stock accrues or commences when the note becomes due, and if such action be not brought within ten years from that time, it is barred by the statute. As land mortgaged is but a security for the debt due to the mortgagee, or in other words, a pledge to him to secure the payment of the debt, there seems to be no good reason why the principles settled in reference to the pledge of personal property, should not be applied to the pledge of real estate.
There are decisions which seem to establish, as an exception to the general rule, limiting the time to redeem to ten years from the time of the maturity of the mortgage debt, that the right of redemption may be kept alive beyond that period, or revived again, by any act of the mortgagee which amounts to an acknowledgment of the mortgagor’s right to redeem, or by special agreement, after foreclosure (Calkins v. Calkins, 3 Barb. 305 ; affirmed in 20 N. Y. 147 ; sub nom. Calkins v. Isbell ; Borst v. Boyd, 3 Sandf. Ch. 501 ; 1 Hill. on Real Prop. 4 ed. 668, § 9).
But these decisions should be read in connection with section 110 of the Code, which, as amended in 1849, provides:
“'Bo acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this title, unless the same be contained in some writing signed by the party, to be charged thereby; but this section shall not alter the effect of any payment of principal or interest.” By the concluding sentence, which was not in the original draft of the Code, the effect of partial payments was declared to be the same as before the Code.
*87 Therefore, after making due allowance for the various changes in the law hereinbefore referred to, the present rights of the owner of the equity of redemption, against the mortgagee or his assigns, before foreclosure valid in law, may be briefly summed up as follows:
I. Where such owner is in possession, as the fact usually is in this country, he has a right to redeem for ten years from the time the mortgage became due, or the subsequent payment and acceptance of part of the principal or interest. At the expiration of that period neither his title nor his right to pay is lost, for the mortgagee can, under no circumstances, maintain ejectment. The statute simply prevents the court from granting affirmative equitable relief to such owner on Ms own application. It simply bars an equitable remedy, but leaves him free to pursue others. He is still at liberty either to tender the amount due, with interest, and thus discharge the lien by his own act without the aid of a judicial sentence, or to delay payment until the mortgagee, who cannot maintain ejectment, sees fit to institute, either by action or advertisement under a power, proceedings to foreclose. This the latter must do within twenty years after the debt is due, or its existence has been acknowledged by an act, sufficient in law, of the owner. As the- owner in the mean time has the full enjoyment of the property, and the rents and profits of the same, he cannot suffer any loss.
II. Where the mortgagee, or one standing in his place, has acquired possession of the mortgaged premises, wrongfully, or in a manner not binding upon the owner of the equity of redemption, no bill to redeem is necessary to recover the possession, but such owner may pursue his legal remedy.
III. Where the mortgagee, or one standing in his place, has acquired the possession with the assent of *88 the owner of the fee, or in any other manner which is binding upon such owner, and the land yields no income, the right of redemption by an action brought for that purpose expires absolutely (unless extended, kept alive or revived by an acknowledgment of such right sufficient in law, on the part of the mortgagee), at the end of ten years from the maturity of the mortgage debt or subsequent payment, and unconditional acceptance of part of the principal or interest.
But if the mortgagee derive income from the land, the owner may bring his action to redeem and for an accounting, within ten years from the time of the receipt by the mortgagee of the last item.
After the right of redemption by action has been barred, the owner is still at liberty, in every case, to tender the amount due upon the mortgage, with interest, to discharge thus the lien, to demand possession, and, upon the mortgagee’s refusal, to bring an action at law for the recovery of the possession of the premises thus freed from the lien. This is a legal right which accrues upon the mortgagee’s wrongful refusal, and such action, it seems to me, can be resisted by the mortgagee only by strict proof of adverse possession under claim of title for more than twenty years.
Indeed, I am not quite sure whether the owner may not, under our system, maintain an action to recover the posseession, without a previous tender, upon proper allegations and affirmative proof of the actual extinguishment of the mortgage debt by the receipt of rents and profits, demand of possession based thereon and made before the acquirement by the mortgagee of title by adverse possession, and the mortgagee’s refusal to deliver. At any rate, I am not prepared, without further investigation,' to deny the owner’s right so to do.
It may appear strange that the morgagee should have twenty years from the maturity of the debt and *89 after any acknowledgment of its existence, within which to foreclose his mortgage, and that the owner of the equity of redemption should be confined to ten years within which to commence his equitable action to redeem and for an accounting. It should be considered, however, that the action for redemption and an accounting rests purely upon equitable principles, and that, consequently, neither tender of amount due nor demand of possession before suit, is absolutely necessary; while the action to foreclose is brought upon an instrument under seal created by the act of the mortgagor, which acknowledges the existence of the legal debt, to secure which the mortgage is given. By reason- of the seal, the debt is not presumed to have' been paid, until the expiration of twenty years . after it becomes due and payable ; and by the express terms of the Code, an action founded upon an instrument under seal may be brought within twenty years. At any rate, the responsibility therefor is with the legislature, which enacted the statute, while it is the duty of the courts to enforce, but not to evade it.
The case of the National Fire Ins. Co. v. McKay (5 Abb. Pr. N. S. 445), cited by appellant’s counsel, is in entire harmony with the views expressed by me. The action was ejectment-. Plaintiffs claimed possession against defendant, under title acquired by deed ' upon sale under decree of foreclosure, entered in February, 18-12. Defendant had succeeded to the rights of the owner of the equity of redemption, by assignment from one Bard ell, who had acquired title by deed from the owner, before foreclosure. Burdell was not made a party to the'action of foreclosure. It was held that, when the owner of the fee has been foreclosed by judicial proceedings, the remedy of an incumbrancer junior to the mortgage, who was not a party to the action or proceeding, and who has not been cut off, is possibly by action to redeem, 'which ac *90 tion must be brought within the time specified in section 52 of the Revised Statutes (ten years). But the remedy of the owner of the fee, who has not been made a party, is not confined to a bill in equity to redeem. He has a concurrent remedy at law; he may tender the amount due upon the mortgage, and bring ejectment at anytime before twenty years’ adverse possession has run agains him. And for the last named reason, the court held further, that the defendant, being in possession with the rights of such owner, was not estopped, although his right to redeem was barred, from defending Ms possession by setting up the Bur-dell title against the plaintiffs, who, as against him, had acquired only the rights of mortgagees, and by reason of that fact, could maintain the action in the face of the statute, which had abolished the right to bring ejectment in such case. I may add that this decision was concurred in by the learned judge, whose ruling, at the trial, was thereby reversed.
This brief review of the course of decisions in this State, and of the changes made in the law, renders it entirely clear that the plaintiff in the case at bar is not entitled to the equitable relief prayed for upon the case made out. And this is so, notwithstanding the fact, which must be conceded, that the foreclosure and sale in 1843 are utterly void as against him. The mortgage, by its terms, was payable November 3, 1839. It- is-admitted by the pleadings, that interest was paid and unconditionally received thereon, up to May 1, 1841. The premises were vacant lots, of which plaintiff was seized at that time, and although the defendants, by answer, set up title by adverse possession for more than twenty years, and actual occupation and impi'ovement of the premises since the purchase of them, plaintiff gave no proof as to when, how or in what manner the mortgagee, through whom defendants acquired their whole title, acquired possession, or *91 whether or not the mortgagee derived any profit therefrom. It does not appear that plaintiff’s right of redemption was ever acknowledged, after the attempted foreclosure, in any way ; and the only circumstance which does appear and may be held to have the effect of preventing the statute of limitations from running from the time of the maturity of the mortgage debt, is the payment and unconditional receipt of interest up to May 1, 1841. The right to redeem, therefore, dates from that day, and became barred on May 1, 1851. The plaintiff, on the other hand, seems to rely wholly and exclusively upon a tender made by him October 16, 1869, coupled with a demand of possession. As at that time more than twenty years had elapsed after the cause of action had accrued, it is wholly insufficient, even if the defendants could be regarded as having acquired the rights of a mortgagee in possession, of which there is no proof. Such insufficiency will still more clearly appear when it is kept in mind that in an action to redeem and for an accounting, neither tender nor demand of possession before suit is absolutely necessary. But even if that were necessary, the plaintiff could not, by his own act, revive a right barred by the statute. That the .complaint was properly dismissed, notwithstanding the reason assigned for the dismissal was somewhat inaccurate, is, therefore, but the logical result óf the legal premises herein stated.
The judgment should be affirmed, with costs, and the plaintiff left to seek his' remedy, if he have any left, in an action at law.
Barbour, Ch. J.
This action is based upon the theory that the plaintiff is entitled, as the owner in fee of the mortgaged lands, to recover the possession thereof from the defendants upon paying to them the amount due upon the mortgage. The complaint was dismissed by the court on the closing of the plaintiff’s proofs, ux> *92 on the ground that his right to recover such possession was barred by the statute of 'limitations ; and the only question argued by counsel on the appeal was whether the right of recovery was or was not so barred.
As Miner, the owner of the lands which we're the subject of the so-called foreclosure suit, was not made a party to that proceeding, his estate in the premises was wholly unaffected by the decree therein. He remained the owner in fee ; and, as such owner, was, and continued to be, entitled to, and, constructively, in the possession of the property, not only as against the mortgagee, but the whole world, just the same as if no suit had ever been brought (Watson v. Spence, 20 Wend. 260) ; and that continued to be his condition up to the time when the defendants, or their grantors, entered into the actual possession of the premises. Previous to the entry of the defendants, therefore, the plaintiff had no right of action against them for the recovery of the possession, either upon or without the payment of the mortgage moneys. But the moment the defendants entered, the plaintiff’s right of action to recover such possession from them, accrued. If their entry was of such a character as to constitute them mortgagees in possession, within the technical meaning of that term, he could have brought an action, ■ as in equity, to recover the possession (not the ownership of the land, which was already' his), upon payment by him of the amount due upon the mortgage. Or, if their entry was that of mere trespassers, he could have recovered the possession from them in an action of ejectment.
As, then, the plaintiff’s right of action did not accrue until the defendants entered into possession, and as there was no evidence before the court tending to prove "when such possession was taken, lam of opinion that the learned justice erred in supposing that the plaintiff’s right of action was barred by the statute of limitations.
*93 It by no means follows, however, that there was error in dismissing the complaint. Such dismissal was proper if the plaintiff would- not have been entitled, upon the pleadings and proofs as they then stood, to a judgment, had both parties rested there, although the reasons given by the judge for his decision were insufficient. It becomes our duty, therefore, to look further into the case; even though we are compelled to do so without the assistance of counsel, and ascertain, if practicable, what were the real rights of the parties, as established by the evidence.
The status of the plaintiff, as'owner of the fee, and, as such owner, the constructive possessor of the mortgaged lands, was wholly unchanged and unaffected by the decree in the so-called foreclosure suit, as I have said. The decision of the court in Watson v. Spence, above cited,—a case, by the way, remarkably like this, —is conclusive upon that subject, if good law, as I think it is. "
I am. also of opinion, upon a careful examination of the question, that the condition of Lawrence, the mortgagee, was in no respect changed by that decree. Because,—
First. There was no party to the so-called foreclosure suit who had any estate or interest whatever in the mortgaged premises, except the mortgagee himself; and his interest was only an equitable lien, by way of mortgage, to secure his debt. The court had no jurisdiction of any estate or interest in the lands other than that; and, of course, no greater or different in terest or estate could have been vested by the decree in a purchaser at the foreclosure sale, let its terms have been what they might. Indeed, the proposition that a purchaser at a sale in foreclosure can take no greater estate in the mortgaged lands than can properly be created by extinguishment, merger, or concentration, out of the several estates and interests therein of the respective *94 parties to the suit, is as incontrovertible as is the rule in mathematics that the whole of a thing is equal to, and no greater than the sum of all its parts.
Second. As there was no party to the so-called foreclosure suit, except the plaintiff, who had, or claimed to have the slightest interest in the subject matter thereof, or in any decree that might be made therein, the entire proceeding, it appears to me, must be considered corara nonjudice, and, therefore wholly void. For, to constitute an action, three persons or parties are requisite and essential—an actor or reus, and a judex ; while, in the pretended foreclosure suit, there was no real defendant, nor indeed, any party against whom a decree could have been had; not, even, a decree over as against the mortgagor for any deficiency there might be upon a sale of the mortgaged lands. For the court had no jurisdiction, as against the owner of the fee, to decree a sale of the lands for the satisfaction of the mortgage, in his absence as a party to the suit; and, therefore, there could be no ascertainable deficiency for, which the mortgagor would be answerable under such pretended decree. The so-called foreclosure suit, therefore must, I think, be held to have been wholly fictitious ; just as much so as if it had been brought against John Doe, or any stranger to the matters which were the subject of the complaint therein.
Assuming the correctness of either or both of these propositions, it follows that Lawrence remained, after and notwithstanding such decree and sale, simply the owner and holder of the mortgage, without possession of the lands, or any right of'possession as against the owner of the fee, but merely entitled, as such owner and holder of the mortgage, to foreclose the same. If that was not the true position of the mortgagee after the sale to him, I see no way to avoid the conclusion that the mortgage debt and lien were satisfied and extinguished by the decree and sale. For that was the *95 sole object of the suit; and such object was accomplished by the sale, if the decree and sale had any validity. " Q
If the defendants in this action acquired any estate or interest whatever in the mortgaged premises, under or by virtue of the conveyances made to them respectively by Lawrence, .they of course took only that equitable lien which he himself had as a mortgagee out of possession, that being the extent of his transferable interest.
But I am of opinion that those deeds vested in the grantees no estate or interest whatever, either in the mortgaged lands or in the mortgage itself. For a mortgagee, not in possession of the premises, has a mere chattel interest, which is transferable by a sale or assignment of the mortgage itself, together with the debt for the security of which it is given, but not by a grant in fee of the land it covers (Runyon v. Mersereau, 11 Johns., 534 ; Jackson v. Curtis, 19 Id., 325 ; Astor v. Hoyt, 5 Wend., 616 ; Astor v. Miller, 2 Paige, 68 ; Lane v. Shears, 1 Wend., 433 ; Stoddard v. Hart, 23 N. Y., 556 ; Kortright v. Cady, 21 Id., 343 ; Waring v. Smith, 2 Barb. Ch., 119, 135 ; Aymar v. Bill, 5 Johns. Ch. 570 ; 4 Kent Com. 160-1).
It is true that Judge Cowen, in his opinion in the case of Watson v. Spence (ubi supra), suggests, by way of argument or elucidation, that the deed of a mortgagee out of possession of the mortgaged lands, “might, perhaps,” enure .as an assignment of the mortgage to the grantee. But, if that eminent jurist intended to declare, as a possibility even, that a grantee in the supposed case could take by his grant the legal ownership of the mortgage debt, or of the mortgage itself, or any interest therein beyond such an equitable interest as might entitle him, in a proper suit, to a decree requiring his grantor to vest the legal ownership in him by an assignment or otherwise, he goes farther, *96 I conceive, than is warranted either by principle or authority. Indeed, if the legal ownership of the mortgage and del¿t can be .held*to pass by the mortgagee’s deed granting the land which it covers, there can be no good reason why an execution against the holder of a mortgage may not be levied upon the land described therein, and such land sold for the satisfaction of the execution, with the same effect; a proposition, I imagine, that few lawyers would undertake to maintain (see Jackson v. Willard, 4 Johns., 41).
In the view I take of the case, however, the question whether the defendants became the owners, in any sense, of the mortgage, by virtue of the conveyances to them respectively, is quite immaterial, in so far as concerns the right of the plaintiff to recover the possession of the lands as in ejectment. For, even conceding, for a moment, that the defendants are the legal holders and owners of the mortgage, it cannot be claimed, under the proofs, that they entered into the possession of the premises under the license or with the consent of the owner of the fee, either actual or implied, or by operation of law, or in virtue of any legal proceedings; and, therefore, they must be considered, not as mortgagees in possession, within the well known meaning of that technical term, but as mere squatters or trespassers. To give them the rights of mortgagees in possession, their occupancy of the mortgaged lands must, at some time at least, have been a legal one, and not that of wrongdoers (see Phyfe v. Riley, 15 Wend., 248, where the mortgagee was the owner in fee of an undivided half of the lands, and was in possession of the whole as tenant in common thereof; and Van Dyne v. Thayer, 14 Id., 233, in which a new trial was granted because evidence of the owner’s consent to the entry of the mortgagee was excluded; also, Fort Burch, 6 Barb., 60 ; Munro v. Merchant, 26 Id., 100 ; Casey v. *97 Buttolph, 12 Id., 637 ; Jackson v. De Lancy, 13 Johns., 537 ; Waring v. Smith. 2 Barb. Ch., 119, 135).
.Considering all this, I am clearly of opinion that the facts set forth in the complaint and established upon the trial in this case would have been sufficient, even though no tender or offer to pay had been made, to entitle the plaintiff, as the owner of the fee, to a judgment awarding to him the possession of the premises occupied by either of the defendants, if the action had been brought against such one, alone, and not against the two, jointly. But the case does not show that these defendants are joint trespassers or occupants, nor that they have, or claim to have, any joint interests whatever in the distinct parcels of land conveyed to and occupied by them, respectively, in severalty; and for that reason, the plaintiff was not entitled to a judgment as in ejectment, in this action, giving to him the possession of his land.
The remaining question is, whether the respective and relative rights of the parties were so changed by the offer and demand of the plaintiff and the refusal oí the defendants, as to entitle the former to any other relief in this action by judgment.
If the defendants had been vested by the conveyances made to them, respectively, by Lawrence, with the ownership of the mortgage and mortgage debt, so that they could be considered as mortgagees, and were legally in possession of the premises as such mortgagees, there can be no- doubt the plaintiff could have sustained this action against them, jointly, to redeem such possession and to remove the cloud upon his title, on payment of the amount due upon the mortgage. For, in that case, the plaintiff would be entitled to that relief as against'each of the defendants, and both would be necessary parties to the action, for the reason that the relative amounts to be paid to them could not, properly, be determined without the presence of *98 both. So, too, if. the evidence upon the trial" had shown that the defendants were the owners of the mortgage in distinct though unascertained proportions, and that they refused to discharge the same on tender of payment, — the plaintiff, would, probably, have been entitled to a judgment determining the amount to be paid to each, and requiring them to execute satisfactions. But they are not mortgagees in possession, nor, even, owners and holders of the mortgage and mortgage debt, and, therefore, have no right to have from the plaintiff the money due upon such debt and mortgage. This, without considering the question as to their liability to the real owner of the mortgage for such payments as they should receive thereupon, is enough, it appears to me to show that the plaintiff is not entitled to a judgment in this action, either awarding to him the possession of the lands or removing the supposed cloud upon his title. The refusal of the defendants to receive money which did not belong to and was not claimed by them, did not constitute a cause of action; nor did their refusal to relinquish the possession of the lands occupied by them in severalty, or to release a lien which they never had or claimed, entitle the plaintiff to a judgment discharging such pretended lien, or dispossessing them. For, as I have already said, the defendants are not mortgagees in possession, nor the holders of a mortgage which is a cloud upon the plaintiff ’s title ;■ and I am not aware of any rule of law or equity which will allow him to convert his right of action against each of the defendants to recover the possession of the lands in ejectment into an equitable action against the two. jointly, by setting up a pretended lien in their favor. If the mortgage is still a lien, notwithstanding the lapse of time, Lawrence appears to be its legal owner, and not the defendants ; and if the defendants are severally in possession of distinct parcels, the plaintiff may have *99 the relief to which he is entitled, by action against each of them, though not in this suit against both.
For these reasons, I am of opinion that the judgment dismissing the complaint should be affirmed.