■ GLENVILLE AND 110 CORPORATION, Respondent, v FRANK TORTORA et al., Appellants.—In an action to foreclose a mortgage, the defendants Tortora, Puma, and Uphill Products, Ltd., appeal from an order of the Supreme Court, Suffolk County (Kelly, J.), dated July 18, 1985, which granted the plaintiff's motion to confirm a Referee's report, and Tortora, Puma and Uphill Products, Ltd., Clinton Capital Corporation, and Four Seasons Solar Products separately appeal from a judgment of the same court, entered July 26, 1985, which, *inter alia,* awarded the plaintiff the sum of $701,562.66, plus interest and costs, and directed the sale of the mortgaged premises to satisfy the judgment.

Appeal from the order dismissed, without costs or disbursements *(see, Matter of Aho,* 39 NY2d 241, 248).

Appeal by Four Seasons Solar Products dismissed, without costs or disbursements, for failure to perfect the same in accordance with the rules of this court (22 NYCRR 670.20 [f]).

Judgment modified, on the law, by reducing the amount awarded to the plaintiff from $701,562.66 to $369,599.33, with interest from June 12, 1985. As so modified, judgment affirmed, without costs or disbursements, and matter remitted to the Supreme Court, Suffolk County, for entry of an appropriate amended judgment.

The plaintiff Glenville and 110 Corporation owned the subject property which was improved by a brick building. The

principals of the plaintiff were the shareholders of Glenville Caterers, Inc., which owned and operated a restaurant business on the aforenoted premises known as the Blue Dolphin Restaurant. Pursuant to a contract of sale executed on July 26, 1982, as modified by a rider dated November 16, 1982, the plaintiff agreed to sell and the defendants Frank Tortora and Phillip Puma agreed to purchase the land and building for $400,000, $100,000 payable at the closing and the remainder payable pursuant to a "Mortgage Note," dated November 16, 1982, in the sum of $300,000, bearing interest at the annual rate of 12%. This note was secured by a purchase-money mortgage, also dated November 16, 1982. The mortgaged property was the land and the brick building. By agreement, dated July 26, 1982, as thereafter amended, the shareholders of Glenville Caterers, Inc., agreed to sell and the defendants Tortora and Puma agreed to purchase the restaurant business and the stock of the corporation for $350,000, payable $50,000 at the closing and in 180 promissory notes, in the aggregate sum of $300,000. The promissory notes were secured by a chattel mortgage. The closing on each contract of sale occurred on November 16, 1982, and the real estate mortgage was recorded on December 14, 1982.

Thereafter, the individual defendants experienced financial difficulties and defaulted with respect to various obligations. On October 31, 1983, the parties to the aforenoted transactions executed a modification agreement, which, *inter alia,* established a new payment schedule for the "Mortgage Note" and the promissory notes.

In the interim, the defendant Clinton Capital Corporation recorded, on December 7, 1982, a second mortgage on the premises and the defendant Four Seasons Solar Products recorded, on January 14, 1983, a third mortgage on the premises.

Subsequently, the individual defendants again defaulted and the plaintiff commenced the instant foreclosure action to recover $587,434.66, with interest, based solely upon the "Mortgage Note" for $300,000, the real estate mortgage, and the modification agreement. The plaintiff did not seek foreclosure of the chattel mortgage nor did it bring suit upon the promissory notes. Moreover, there is no allegation or evidence in the record that the plaintiff is currently the holder of the promissory notes. Rather the holders of those notes appear to be the individual shareholders who sold the restaurant business and the shares of Glenville Caterers, Inc.

The plaintiff moved for summary judgment, submitting

evidentiary proof that the individual defendants defaulted under the terms of the mortgage and modification agreement by making payments with four checks, totaling $8,317.33, that were drawn on an account with insufficient funds, by failing to timely pay taxes and to timely obtain a certificate of occupancy, and by transferring the premises to Uphill Products, Ltd., a corporation purportedly owned solely by the individual defendants. Special Term granted the plaintiff's motion for summary judgment and by order dated October 2, 1984, appointed a Referee, *inter alia,* to "ascertain and compute the amount due to the plaintiff on the bonds and mortgages and agreements set forth in the complaint".

After a hearing was conducted, the Referee issued his report, finding that, in exchange for the plaintiff excusing the individual defendants' defaults, the modification agreement dated October 31, 1983, provided for a purchase-money mortgage lien on the premises in the amount of $600,000, less payments made. In other words, the mortgage was modified to secure the entire indebtedness of the individual defendants. It is noteworthy that it was not until after the hearing that the plaintiff paid the mortgage tax on the increased indebtedness secured by the real estate mortgage, as modified by the agreement of October 31, 1983 *(see,* Tax Law § 250, 256) and recorded the latter *(see,* Tax Law § 258 [effect of nonpayment of taxes]). The Referee also found that all liens recorded prior to the filing of the modification agreement retained their priority. The Referee computed the total amount owed the plaintiff to be $701,562.66, i.e., $328,963.33 for the principal and interest on the original land mortgage, $328,963.33 for the principal and interest on "The Purchase Money Mortgage Increase in the Modification Agreement", $22,802 for attorney's fees, $16,884 for repayment of insurance premiums, $3,000 for mortgage taxes, and $950 for advertising and publication expenses.

By judgment entered July 26, 1985, Special Term, *inter alia,* awarded the plaintiff $701,562.66, with interest from the date of the Referee's report, and directed a foreclosure sale of the premises to satisfy the award.

The individual defendants contend that the Referee erroneously construed the modification agreement as consolidating the purchase-money real estate mortgage with the chattel lo mortgage to create a new lien on the real property of $600,000. We agree.

The law is clear that parties to an outstanding real estate mortgage may, by written agreement, extend the mortgage to

cover an additional indebtedness not within the contemplation of the parties at the time the mortgage was given *(see generally, Extension of Existing Real Estate Mortgage or Deed of Trust by Subsequent Agreement to Cover Additional Indebtedness,* Ann., 76 ALR 574; 38 NY Jur, Mortgages and Deeds of Trust, § 182; *cf. Stoddard v Hart,* 23 NY 556). Similarly, an agreement consolidating two or more mortgages on the same property may be duly effectuated by appropriate execution by the parties holding the encumbrances affected *(see generally,* Marks, Mortgages and Mortgage Foreclosure in New York § 119, at 192; Drussel & Foran, Mortgages and Mortgage Foreclosure in New York § 17:11, at 388; 3A Warren's Weed, New York Real Property, Consolidation of Mortgages § 15.01, at 182-183). The Referee's construction of the modification agreement was apparently predicated upon parol evidence. Over specific objections, and in derogation of CPLR 4320, the conflicting testimony adduced at the hearing was never transcribed and submitted to Special Term *(see, Aron v Aron,* 280 NY 328; *cf. Matter of Galiber v Previte,* 40 NY2d 822; *Goldberg v Green,* 270 App Div 856, *lv denied* 270 App Div 1024, *appeal dismissed* 296 NY 830). Notwithstanding this defect, the clear and unambiguous language of the modification agreement neither consolidates the purchase-money real estate mortgage with the chattel mortgage nor extends the lien of the former to cover the indebtedness secured by the latter, i.e., the promissory notes. The subject agreement merely modifies incidental terms of the mortgage, terminates an escrow agreement, establishes a new payment schedule for both the mortgage note and the promissory notes, excuses defaults and restates certain obligations. This agreement did not enhance the extent of the mortgagee's lien on the affected premises, as evidenced by the following language: "The Borrowers acknowledge a total outstanding indebtedness on the Mortgage and Series of Promissory Notes dated November 16, 1982 in the amount of SIX HUNDRED THOUSAND ($600,000.00) DOLLARS, specifically THREE HUNDRED THOUSAND ($300,000.00) DOLLARS on the Mortgage Note and a series of promissory notes totalling THREE HUNDRED THOUSAND ($300,000) DOLLARS, less any payments received by the LENDERS as of the date of the signing of this Agreement". In the absence of any ambiguity in the language used by the parties, as in this case, construction of the note, mortgage instrument and modification agreement is a question of law and circumstances extrinsic to the documents may not be considered *(Connelly & Blitzer Realty v Elwyn,* 111 AD2d 555; *Kozan v Levin,* 50

AD2d 663, 664). We conclude that the mortgage on the real property only secures, by its express terms, the mortgage note in the sum of $300,000 and that the modification agreement did not extend this mortgage to secure the promissory notes. Consequently, we modify the judgment by deleting the sum of $328,963.33 awarded for "The Principal and Interest on the Purchase Money Mortgage increase in the Modification Agreement" and the sum of $3,000 awarded for the mortgage recording tax.

In view of this disposition, we need not address the merits of the arguments asserted by Clinton Capital Corporation which has a lien on the subject premises subordinate to the plaintiff's first mortgage. We direct its attention to RPAPL 1361 which governs applications by persons claiming surplus moneys arising upon the sale of mortgaged premises. Lazer, J. P., Rubin, Lawrence and Kooper, JJ., concur.